54765. SPACE LEASING ASSOCIATES et al. v. ATLANTIC BUILDING SYSTEMS, INC. et al.

WEBB, Judge.

This action was initiated by Space Leasing Associates and J. S. Singletary, d/b/a J. S. Singletary Company, against Atlantic Building Systems, Inc. Atlantic is the successor in interest to all rights and obligations of Dixisteel Building, Inc. and Space Leasing is the successor in interest to the rights and obligations of Singletary.

In May of 1968 Singletary contracted with the Southeastern Land & Leasing Corporation to construct in Duluth a warehouse and office complex for the General Services Administration. Singletary subcontracted a portion of the construction to Dixisteel, now Atlantic, including the fabrication and installation of the metal roof called for by the plans and specifications. A written contract covering the work was executed which contained

the following warranty provision:

"DBI [Dixisteel] warrants the workmanship and material on all products fabricated by DBI for a period of six (6) years from the date of completion of erection. DBI's obligation is to furnish to the building site replacement material for any such material or workmanship which so proves defective and about which DBI has written notice of within said six-year period, and, in no event is DBI to be liable for damages or injury to persons or property, or for damage, corrosion, rust, or deterioriation caused by acids or other corrosive materials or Purchaser's unusual use of the building(s). The foregoing warranty is in lieu of all other warranties, expressed or implied, including an implied warranty of merchantability, and there are no warranties which extend beyond the description on the face hereof."

H. S. Williams Company, Inc. thereafter contracted with Atlantic to unload and erect materials on the job site and gave a one year warranty in this connection. Construction work on the project was completed in May, 1969.

After GSA had begun occupying the premises, proceedings under Chapter X of the Bankruptcy Act were brought against Southeastern, and a plan was approved under which ownership of the office and warehouse facility and the lease with GSA were transferred to Space Leasing. During the bankruptcy proceedings the roof on the facility began leaking and the trustee in bankruptcy and Space Leasing demanded that Dixisteel/Atlantic perform corrective work under the warranty provision of the contract. Atlantic did perform corrective work under the warranty provision and on September 1, 1971, the following communication was sent by counsel for Atlantic to Singletary's attorney:

"This letter confirms our telephone conversation of last night.

"I advised you that it was our understanding of the contract between Atlantic Building Systems, Inc. and J. S. Singletary that our obligation is to furnish replacement materials to the job site for any materials fabricated by Atlantic Building Systems, Inc. which prove defective during the warranty period. We agreed, however, that it

was in our mutual best interest to do everything possible to keep the government from taking over any work on the roof of the building and that in an effort to forestall such taking over we would perform certain corrective work even though the same goes beyond our obligation to you with the understanding that we are in no way creating a precedent or admitting any liability.

"We further advised you that we had had engineering studies made of the problems on the GSA roof and that our work would be in accordance with the studies."

By subsequent letter dated June 2, 1972, Atlantic stated in material part as follows:

"Atlantic Building Systems, Inc., has now completed all the work which it agreed to undertake at the meeting with you and the GSA representatives at the GSA premises on September 7, 1971. We have far exceeded our contract commitment with respect to this building in an effort to cooperate with you and the GSA. However, we continue to receive calls requesting that we do additional work.

"We have not obligated ourselves to perform normal maintenance and the purpose of this letter is to advise you that we will not perform any maintenance-type work on the building. However, if you will like to have advisory assistance we will be happy to arrange this on some mutually satisfactory basis."

On November 17, 1975, Space Leasing filed a complaint for declaratory judgment in which it alleged that the roof installed was defective, not in accordance with the plans and specifications and contrary to the contract between Dixisteel and Singletary, and that it had expended substantial sums in performing the corrective work. Recovery was sought in an amount equal to the net difference between what was due and owing Atlantic under the bankruptcy plan and the cost of the corrective action on the roof. Atlantic filed an answer and counterclaim for the amount alleged due, and a third party complaint against Williams for full indemnity of workmanship performed and for contribution towards any recovery by Space Leasing. By amendment the defense of statute of limitation was added and Atlantic's

motion for summary judgment was granted on this ground, resulting in this appeal.

The question presented for decision is which of three limitation statutes is applicable here: The four-year Uniform Commercial Code provision governing sales (Code Ann. § 109A-2—725); the six-year general contract statute of limitation (Code § 3-705); or Code Ann. § 3-1006 (1) allowing actions for deficiencies in connection with improvements to real property to be brought within eight years after "substantial completion of such improvement."

1. At the outset we must eliminate the latter provision[1] without deciding whether we agree with Space Leasing's argument on appeal that it is applicable to this action. The warranty given by Dixisteel is part of a contract dated February 27, 1968, and Code Ann. § 3-1006 (Ga. L. 1968, p. 127) was not approved until March 8, 1968. Thus it clearly was not effective as of the date of the original warranty and this court has previously held that this statute cannot be retroactively applied. *Jaro, Inc. v. Shields,* 123 Ga. App. 391 (181 SE2d 110) (1971). Furthermore, since this argument was raised for the first time on appeal it presents nothing for review. See, e.g., *Gaskins v. Vickery,* 234 Ga. 833, 834 (1) (218 SE2d 617) (1975).

2. Space Leasing asserts that because the action was one for breach of contract for improper design and erection it was timely filed within the six-year limitation of Code § 3-705.[2] This contention must also fail.

---

[1] "No action to recover damages (1) for any deficiency in the survey or plat, planning, design, specifications, supervision or observation of construction or construction of an improvement to real property . . . shall be brought against any person performing or furnishing the survey or plat, design, planning, supervision or observation of construction, or construction of such an improvement more than eight years after substantial completion of such an improvement." Code Ann. § 3-1006 (1).

[2] "All actions upon . . . simple contracts in writing shall be brought within six years after the same shall

"Under Georgia law, the statute of limitations runs from the time the contract is broken 'and not at the time the actual damages results or is ascertained.' *Mobley v. Murray County,* 178 Ga. 388, 173 SE 680; *Gould v. Palmer and Reed,* 96 Ga. 798, 22 SE 583; *Houser v. Farmers Supply Company,* 6 Ga. App. 102, 64 SE 293." National Hills Shopping Center v. Insurance Co. of North America, 320 FSupp. 1146, 1147 (1) (S. D. Ga. 1970). See also *Worrill v. Pitney-Bowes,* 128 Ga. App. 741, 743 (2) (197 SE2d 848) (1973). Thus it was held in *Wellston Co. v. Sam N. Hodges, Jr. & Co.,* 114 Ga. App. 424 (151 SE2d 481) (1966) that a cause of action "arising out of the alleged negligent design and construction of a building by the defendants under contract with the plaintiff accrued and the statute of limitation started to run when the negligent acts were committed resulting in damage to plaintiff, and not when a portion of such building later collapsed as a result of the defendants' negligence in improperly designing and constructing it." See also *Caroline Realty Invest. v. Kuniansky,* 127 Ga. App. 478, 482 (4) (194 SE2d 291) (1972).

In the instant case, in its answers to interrogatories propounded by Atlantic, Space Leasing admitted that construction of the building in question was substantially completed in May, 1969, and that GSA began to move in that same month. The contract also became "due and payable" at that time. Therefore any breach of contract action based upon alleged design and installation defects accrued in May, 1969, and Space Leasing did not file its complaint until November 17, 1975, more than six years after the cause of action accrued.

3. The contract here is entitled a "Contract for Sale and Erection of Dixisteel Building(s)." Thus, whether or not Code Ann. § 109A-2—725[3] is applicable as urged by

---

have become due and payable." Code § 3-705.

[3] "(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

Atlantic under decisions such as Cleveland Lumber Co. v. Proctor & Schwartz, 397 FSupp. 1088 (N. D. Ga. 1975) and Lakeside Bridge & Steel Co. v. Mountain State Construction Co., 400 FSupp. 273 (E. D. Wis. 1975) presents a question of fact as to whether the subject of the transaction is "movable." The sales article of the UCC applies only to transactions in goods (Code Ann. § 109A-2—102), and the term "goods" is defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale. . ." Code Ann. § 109A-2—105 (1).

4. Moreover, even assuming the UCC to be applicable to the facts here, there is also a question of fact as to whether the cause of action for breach of warranty to repair and replace accrued prior to the four-year limitation period. While a breach of warranty generally occurs upon delivery of the goods regardless of the time of discovery of the breach under Code Ann. § 109A-2—725, where there is an agreement to repair or replace, the warranty is not breached until there is a refusal or failure to repair. "[I]t is the *refusal to remedy* within a reasonable time, or a *lack of success* in the attempts to remedy which would constitute a breach of warranty." *Ford Motor Co. v. Gunn,* 123 Ga. App. 550, 551 (181 SE2d 694) (1971). See also *Jacobs v. Metro Chrysler-Plymouth,* 125 Ga. App. 462 (188 SE2d 250) (1972); *General Motors Corp. v. Halco Instruments,* 124 Ga. App. 630 (185 SE2d 619) (1971).

Space Leasing alleged in its complaint that "Atlantic furnished materials and performed corrective work on the roof installed by Dixisteel, as Dixisteel and Atlantic were obligated to do under the contractual warranty provision,

---

"(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Code Ann. § 109A-2—725.

until September 1, 1971, at which time Atlantic ceased performing corrective work and first breached its obligation to perform corrective work when called upon to do so. Thereafter the Trustee and Space Leasing were forced to undertake necessary corrective actions at their own expense."

It now argues, however, that there is nothing in the record showing any breach prior to the letter of June 2, 1972; and, in fact, Atlantic responded in its answers to interrogatories as to corrective work performed that it had "completed all corrective work which it agreed to undertake at the meeting with J. S. Singletary and the GSA representatives at the GSA premises on September 7, 1971 by approximately June 2, 1972."

Atlantic cites a number of cases for the proposition that admissions made in pleadings, absent contradictory evidence in the record or other qualifying factors, constitute admissions in judicio binding on the party making them. See, e.g., *Venable v. Block,* 138 Ga. App. 215 (1) (225 SE2d 755) (1976); *State Hwy. Dept. v. Lumpkin,* 222 Ga. 727, 728 (152 SE2d 557) (1966); *Reynolds v. Reynolds,* 238 Ga. 1, 3 (1) (230 SE2d 842) (1976); *Summerlot v. Crain-Daly Volkswagen,* 138 Ga. App. 839 (227 SE2d 463) (1976). However, none of these cases involved a situation where the purported judicial admission was in conflict with other evidence in the record, including contrary evidence presented by the party seeking to take advantage of the admission.

Space Leasing contends that its recitation of the September 1, 1971 date was a typographical error rather than an admission in judicio. The Supreme Court granted certiorari in the *Summerlot* case, relied upon by Atlantic, to consider this same question and agreed with the applicant "on the procedural issue. The Civil Practice Act provides that when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. It also provides that pleadings may be amended so as to conform to the evidence, but failure to so amend does not affect the result of the trial on the issues actually tried. Code Ann. § 81A-115 (b)." *Summerlot v. Crain-Daly Volkswagen,* 238 Ga. 546, 547 (1) (233 SE2d

749) (1977).

The thrust of this holding, that where a pleading is in conflict with other evidence it will be deemed amended to conform with the evidence, is in accord with the federal courts' construction of Rule 15 (b). These cases have consistently held that pleadings are deemed amended to conform with the evidence whether formally amended or not, even if the allegations of the pleadings are contradictory to the evidence. See, e.g., SEC v. Rapp, 304 F2d 786 (2d Cir. 1962); National Farmers Union Property & Casualty Co. v. Fisher, 284 F2d 421 (8th Cir. 1960); Gibbs v. Randolph, 250 F2d 41, 43 (5th Cir. 1957); International Harvester Credit Corp. v. East Coast Truck & R. V. Sales, 387 FSupp. 820 (S. D. Fla. 1975). See generally 3 Moore's Federal Practice 983, § 15.13[2]. Cf. *Martin v. Pierce,* 140 Ga. App. 897, 899 (232 SE2d 170) (1977), where this court found no basis for considering the pleadings to have been amended by the evidence.

It is clear that factual issues also exist as to when Atlantic abandoned its warranty obligations and refused or failed to perform further corrective work. Therefore, since it bore the burden of establishing that there were no disputes of fact as to any material issues, the grant of its motion for summary judgment was in error.

*Judgment reversed. Deen, P. J., and Birdsong, J., concur.*

ARGUED NOVEMBER 2, 1977 — DECIDED NOVEMBER 22, 1977 — REHEARING DENIED DECEMBER 9, 1977 — 

*I. Murchison Biggs, Trotter, Bondurant, Griffin, Miller & Hishon, Harry L. Griffin, Jr., James E. Stephenson, Robert D. Marshall,* for appellants.

*Hansell, Post, Brandon & Dorsey, Jefferson D. Kirby, III, Jones, Bird & Howell, Thomas J. Hughes, Michael D. Sabbath,* for appellees.