68358. MUNDAY v. STATE FARM FIRE & CASUALTY COMPANY.
(323 SE2d 193)

POPE, Judge.

Sally Carol Sims brought this action against Sandra Kay Munday (appellant herein) seeking recovery of property damage to her automobile in the amount of $1,800 as the result of a March 6, 1982 collision. Munday answered denying liability and counterclaimed for personal injury and property damage as well as for pain and suffering. Munday also filed a third-party complaint pursuant to OCGA § 9-11-14 against State Farm Fire & Casualty Company (appellee herein), her alleged insurer, seeking indemnity against any recovery by Sims. The third-party complaint also sought recovery of the amount of property damage to her automobile and medical expenses, a 25% penalty pursuant to OCGA § 33-4-6, attorney fees and punitive damages. Appellee State Farm moved for summary judgment on two grounds: (a) cancellation of the policy issued to appellant prior to the subject collision, and (b) a condition in the policy that no right of action accrues against appellee under the liability coverage of the policy "until the amount of damages an *insured* is legally liable to pay has been finally determined by: (1) judgment after actual trial, and appeal if any; or (2) agreement between the *insured,* the claimant and us [State Farm]." In the alternative, appellee sought a separate trial on the issue of its liability to appellant. The trial court granted appellee's motion for summary judgment on the ground that appellant's third-party action was premature based on the foregoing policy provision. Appellant Munday brings this appeal from that order.

1. OCGA § 9-11-14 does not permit, nor does it grant discretion to the trial court, to implead when there are separate and independent controversies between the defendant and the desired third-party defendant. *Cohen v. McLaughlin*, 250 Ga. 661 (1) (301 SE2d 37) (1983); *Southern R. Co. v. Ins. Co. of North America*, 228 Ga. 23 (5b) (183 SE2d 912) (1971); *Bill Heard Chevrolet Co. v. Gen. Mtrs. Acceptance Corp.*, 120 Ga. App. 328 (170 SE2d 454) (1969). Thus, as to all of appellant's claims against appellee except that for indemnity, it is clear that the trial court properly dismissed these claims against appellee. *Dorsey Heating &c. Co. v. C. C. Dickson, Inc.*, 153 Ga. App. 599 (2) (266 SE2d 282) (1980). Cf. *Automated Medical Svcs., Inc. v. Holland*, 166 Ga. App. 57 (4) (303 SE2d 127) (1983). In regard to these claims, as appellee admits in its brief, the "no action" provision of the policy applies solely to an action for liability coverage and, thus, does not preclude an independent action against it prior to resolution of the case at bar. See, e.g., Paul Holt Drilling, Inc. v. Liberty Mut. Ins. Co., 664 F2d 252 (2) (10th Cir. 1981).

2. After the subject collision, appellant filed claims with appellee for personal injuries and for property damage to her vehicle. Appellee denied coverage claiming cancellation of appellant's policy some three weeks prior to the collision. In January 1983 appellant executed, at appellee's request, a "Request for Claim Service and Non-Waiver of Rights" form. Nevertheless, when Sims brought suit against appellant, appellee refused to defend the suit on appellant's behalf; hence, appellant's third-party action against appellee.

As to appellant's remaining claim for indemnity, we are presented in this case with the question of whether appellant, as a defendant in a negligence action, may implead her own liability insurer. Our research has disclosed no Georgia case precisely on point[1]; however, we find the response to this question by Professors Wright and Miller in the following excerpts from their treatise to be both informative and persuasive:

"At the outset it should be noted that the question of impleading an insurer can arise only in that limited class of cases in which the insurer has disclaimed liability and refused to defend on behalf of the insured. If the insurer actually is conducting the defense, it is hardly likely to seek to implead itself and any attempt by the insured to implead an insurer who has not disclaimed liability clearly would be a

---

[1] The three Georgia cases cited by appellee in support of its summary judgment motion — *Cotton States Mut. Ins. Co. v. Keefe*, 215 Ga. 830 (113 SE2d 774) (1960); *Thompson v. Bolton Chevrolet Co.*, 125 Ga. App. 369 (187 SE2d 574) (1972); *Krasner v. American Guarantee &c. Ins. Co.*, 110 Ga. App. 468 (138 SE2d 921) (1964) — all involve actions by injured parties directly against the alleged tortfeasor's insurer and are, thus, factually distinguishable from the case at bar. These cases bar such an action in light of "no action" clauses in the insurance policies therein similar to the one in the instant case.

breach of the 'cooperation' clause of the insurance policy . . . When the insurer disclaims liability and refuses to defend on behalf of the insured, the federal courts, as well as state courts with procedural rules similar to the federal rules,[2] uniformly recognize the propriety of impleader . . .

"Impleader frequently has been challenged when the insurance policy contains either a 'no action' clause or a provision stating something to the effect that 'nothing contained in this policy shall give any person or organization any right to join the company as a codefendant in any action against the insured to determine the insured's liability.' These clauses are inconsistent with the policy in favor of accelerating the determination of liability that underlies Rule 14. Thus, since the leading case of Jordan v. Stephens, [7 FRD 140 (W.D. Mo. 1945),] federal courts, and state courts with similar rules, have given effect to the impleader device at the expense of these insurance policy provisions. In the Jordan case the court said: 'The "no action" clause is directly opposed to Rule 14. It poses a question as to whether the court should permit litigants to circumvent rules of court by contractual arrangements. Rule 14 was promulgated not only for the purpose of serving litigants but as a wise exposition of public policy. The object of the rule was to facilitate litigation, to save costs, to bring all of the litigants into one proceeding, and to dispose of an entire matter without the expense and the labor of many suits and many trials. The no-action provision of the policy is neither helpful to the third-party defendant, to the courts, nor generally is it in the interest of the public welfare. Its object is to put weights on the already too slow feet of justice. Moreover, such provision, if permitted to become effective, should not operate in this case for the reason that the third-party defendant is alleged to have breached its contract. According to the third-party complaint, it has declined to perform the obligation of its undertaking in any way. It has refused to defend the defendants or third-party plaintiffs and has declined to meet the expenses contemplated by its contract. Under such circumstances it should not be permitted to interpose contractual provisions of a contract it has repudiated.' [Id. at 142.]

"A different result is not required when the argument for honoring the policy provision is premised on the contention that the 'no action' clause creates a substantive right in favor of the company immunizing it from impleader. Courts have rejected this analysis and noted that the 'no action' clause merely means that there may be no recovery against the insurer except on the basis of a final judgment

---

[2] Rule 14 of the Federal Rules of Civil Procedure is identical in content to OCGA § 9-11-14. *Cohen v. McLaughlin*, supra at 662.

against the insured. Rule 14 only accelerates the determination of the insurer's liability; it does not result in a judgment against the insurer except when based on a prior judgment against the insured.

"The most frequent argument used by insurance companies in an attempt to avoid impleader is that the procedure is prejudicial to the insurer because it informs the triers of fact that defendant is protected by insurance. However, as noted in Schevling v. Johnson, [122 FSupp. 87, 89-90 (D. Conn. 1953), affd. 213 F2d 959 (2d Cir. 1954)]: 'In these days it is a matter of common knowledge that there is a wide coverage of the automobiles on the highways of this State by liability insurance and that for many automobiles on Connecticut highways such coverage is compulsory under the law of the State where the automobile was registered. It simply is not realistic, against the background of the swollen stream of negligence litigation with which every jury grapples, to think that but for the presence of these insurers in court the jury would have assumed that Toohey would have had to satisfy any verdicts rendered out of his own resources, and hence would have softened their verdicts. Nor is it sensible to think that a jury trying separately a direct action by Toohey against the insurers would have been more immune from considerations of sympathy or prejudice than was this jury. Indeed, it is my personal opinion, based on other cases, that the disclosure in a negligence case of the presence of an insurer's interest tends to make a jury conscious of the impact of verdicts on insurance premiums and hence tends to emphasize the importance of the jury function. Such a result, obviously, is not prejudicial to insurers. Nor is it destructive of justice to plaintiffs. Justice does not require that law suits shall be torn from their context in contemporary life and be tried in an artificially produced vacuum. Occasionally, when the presence of an insurance company is disclosed . . . through improper tactics, there may arise need for the judge to make some reference to the relationship between verdicts and the structure of the insurance business in order to impress the jury with the need for a sense of responsibility in its verdict. But only undue cynicism will support the thesis that knowledge of the presence of an insurer's interest will necessarily distort a juror's judgment.'

"This is the view commonly supported and expressed by federal courts today. Obviously the prejudice problem cannot arise at all in cases that are to be tried by the court rather than to a jury. In jury cases, the proper procedure . . . is to order separate trials or severance especially when the issues as between the insured and his insurer are different from the issues between plaintiff and the insured. In short, automatic denial of impleader is improper and separate trials are justifiable only on grounds of the prejudice caused by the confusion and delay of litigating the actions together." 6 Wright & Miller, Fed. Practice & Procedure: Civil, § 1449 at 267-273. 3 Moore's Fed-

eral Practice ¶ 14.12; 1A Barron & Holtzoff, Fed. Practice & Procedure: Civil, § 426.2. See also *J. C. Penney Co. v. Malouf Co.*, 230 Ga. 140, 145 (196 SE2d 145) (1973) (on motion for rehearing).

In applying the foregoing analysis to the facts in this case — specifically, appellee's denial of coverage coupled with its refusal to defend appellant in this action — we are persuaded that the trial court erred in dismissing appellant's third-party indemnity claim against appellee. We are buttressed in this holding by the policy of the Civil Practice Act, that it " 'shall be construed to secure the *just, speedy* and *inexpensive* determination of every action.' [OCGA § 9-11-1.] In expounding this policy, our courts have held that the impleader provisions are to be *liberally* construed to avoid multiplicity of actions, to save time and cost of reduplication of evidence and to assure consistent results from similar evidence and common issues. [Cits.]" *McMichael v. Ga. Power Co.*, 133 Ga. App. 593, 594-5 (211 SE2d 632) (1974). To the extent that language contained in this court's opinion in *Thigpen v. Koch*, 126 Ga. App. 182, 186 (190 SE2d 117) (1972), would require a result different from that reached here, it is obiter dicta and will not be followed. We express no opinion as to appellee's alternative motion for a separate trial on the third-party claim as this issue has not been addressed by the trial court.

*Judgment affirmed in part; reversed in part. Banke, P. J., and Benham, J., concur.*

DECIDED SEPTEMBER 14, 1984 —
REHEARING DENIED OCTOBER 16, 1984.

*Ansell T. Maund III*, for appellant.
*C. Scott Greene, Edward J. Bauer*, for appellee.