**Daniel Philip HALL,**
**Plaintiff–Appellant,**

v.

**ALLSTATE INSURANCE COMPANY,**
**Defendant–Appellee.**

No. 88–8759.

United States Court of Appeals,
Eleventh Circuit.

Aug. 10, 1989.

---

Richard A. Childs, Swearingen, Childs & Philips, Columbus, Ga., for plaintiff-appellant.

Richard A. Marchetti, Page, Scrantom, Harris & Chapman, P.C., Michael D. Smith, Columbus, Ga., for defendant-appellee.

Before KRAVITCH, JOHNSON and ANDERSON, Circuit Judges.

KRAVITCH, Circuit Judge:

Appellant, Daniel Philip Hall, sued appellee, Allstate Insurance Company, in the State Court of Muscogee County, Georgia, seeking: (1) damages for Allstate's failure to pay an amount Hall had become liable to pay to a third party pursuant to the judgment in a tort action arising out of an automobile collision and (2) damages for Allstate's refusal to defend Hall in the underlying tort action. Allstate removed the action to the federal district court and moved to dismiss the complaint as time-barred. The district court dismissed the action, and Hall appeals. We reverse in part and remand.

## I. BACKGROUND

On October 9, 1980, while Hall was driving a truck owned by Pineco, Inc., he collided with an automobile driven by Howard Lee Crabtree. At that time, Allstate insured Hall's personal car, under a policy which provided, in part:

> Allstate will pay for all damages a person insured is legally obligated to pay—because of bodily injury or property damage ... [and Allstate] ... will defend a person insured if sued as the result of an auto accident.
>
> .    .    .    .    .
>
> No insured person may sue [Allstate] under this coverage unless there is full compliance with all the terms of the policy.
>
> If liability has been determined by judgment after trial, or by written agreement among the insured, the other person, and [Allstate], then whoever obtains this judgment or agreement against a person insured, may sue [Allstate] up to the limits of this policy. However, no one has the right to join [Allstate] in a suit to determine legal responsibility.

On February 17, 1982, Crabtree sued Hall in the State Court of Muscogee County, Georgia, asserting that the accident was caused by Hall's negligence and claiming damages for personal injuries. Hall, in turn, demanded that Allstate defend the action in accordance with his personal automobile policy.

By a letter of March 18, 1982, Allstate refused to defend the action and denied that the policy covered damages resulting from the accident. The letter stated, in part:

With respect to the accident in which you were involved, occurring on 10/09/80 at Columbus, Georgia, the Allstate Insurance Company hereby disclaims and denies any and all liability or obligation to you and to others under its policy numbered 015570756 and issued to you.

. . . . .

The Allstate Insurance Company will take no further action with respect to any claim which you may have against it or with respect to any claim or suit against you which has arisen, or which may arise, out of the said accident and hereby withdraws from the matter entirely.

A similar letter sent on March 19, 1982, by Allstate's litigation counsel, Richard A. Marchetti, to Hall's attorney, Richard Childs, stated:

As noted in the letter from Allstate Insurance which I delivered to you and Mr. Hall this date, it is the position of Allstate Insurance Company that it does not afford coverage to Daniel Phillip [sic] Hall in connection with the automobile accident which is the subject of the above captioned lawsuit, and for this reason Allstate will not provide a defense to Mr. Hall in the case nor pay any damages which might be assessed against him. Allstate Insurance Company has instructed us to take no further action in connection with the defense of said suit.

In a letter dated April 8, 1982, Childs responded to the Marchetti letter, stating:

[Y]ou on behalf of your ... client insurance company have declined to defend and cover Mr. Hall.

Accordingly, we have been forced to file Defensive pleadings on behalf of Mr. Hall, a copy of which I enclose herewith.

Please be advised that we intend to hold your client[ ] accountable for all costs and expenses and attorney fees incurred by [its] failure to defend Mr. Hall and [its] failure and refusal to cover any

liability that he may be determined to have.

Final judgment in the Crabtree litigation was entered on April 23, 1984, awarding $32,000 in damages against Hall. Hall filed this action in the State Court of Muscogee County on April 20, 1988. The complaint alleges, first, that Allstate breached its duty to pay the *Crabtree* judgment and, second, that Allstate breached its duty to defend the Crabtree litigation. Allstate removed the action to the United States District Court and moved to dismiss the action as time-barred, arguing that Georgia's six-year statute of limitations for contract actions began to run on March 19, 1982, when Hall received Allstate's letter denying coverage and refusing to defend the *Crabtree* action. Citing the policy's "no action" clause, Hall argued that, although the six-year limitations period is applicable, it did not begin to run until entry of the *Crabtree* judgment on April 23, 1984. The district court granted Allstate's motion.

## II. DISCUSSION

Hall now concedes that the six-year limitations period began to run on his claim for Allstate's refusal to defend the *Crabtree* action upon his receipt of Allstate's March 18, 1982, letter and that the district court correctly dismissed that claim as time-barred.[1] Arguing that his claim for Allstate's refusal to pay the *Crabtree* judgment is wholly independent of his now time-barred cause of action for Allstate's failure to defend, however, Hall asserts that his claim for Allstate's refusal to pay did not accrue until entry of the *Crabtree* judgment. According to Hall, this case is controlled by the former Fifth Circuit's decision in *Ginn v. State Farm Mut. Auto. Ins. Co.*, 417 F.2d 119 (5th Cir.1969),[2] which held that, under Georgia law, the statute of limitations begins to run on an insured's cause of action for breach of a liability insurance policy containing a "no action" clause upon entry of the judgment for

---

1. Accordingly, we affirm the district court's dismissal of that claim without discussion.

2. The Eleventh Circuit, in the in banc decision in *Bonner v. City of Prichard*, 661 F.2d 1206,

1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

which the insured seeks payment. Alternatively, Hall argues that, even disregarding the "no action" clause, entry of judgment in the *Crabtree* case was a condition precedent to the accrual of his cause of action for payment of that judgment. In either case, Hall concludes, the district court erred by dismissing this claim as time-barred.

### A. *Effect of the "No Action" Clause*

*Ginn*, a case strikingly similar to the one at bar, was decided under Georgia law by the former Fifth Circuit. The insurer, State Farm, sent to its insured, R.S. Ginn, a letter notifying him that State Farm would neither defend the pending tort action against him nor pay any damages for which he might be adjudged liable in that case. More than six years after receipt of the letter but less than six years after entry of judgment against him in the underlying tort action, Ginn sued State Farm for breach of the insurance contract, and the district court dismissed the action as time-barred. The Fifth Circuit reversed, concluding that "[t]he rule is well-settled in Georgia that a cause of action on a liability insurance contract containing a 'no action' clause may not be maintained until a final judgment has been obtained against the insured ... [and, therefore,] ... the statute must be considered suspended until the date when appellants could first have maintained their action for breach—the date when the insured party's judgment became final." 417 F.2d at 122–23. The "no action" clause made it unnecessary for the court "to determine whether the statute of limitations would run separately" as to Ginn's claims for refusal to defend the underlying action and refusal to pay the judgment in that action. 417 F.2d at 121 n. 2.

If *Ginn's* holding regarding the effect of "no action" clauses still was good law, Hall would be correct to assert that it controls this case, as the insurance contract here at issue contains almost identical language. The decisions in *Munday v. State Farm Fire & Cas. Co.*, 172 Ga.App. 382, 323 S.E.2d 193 (1984), and *Argonaut Ins. Co. v. Atlantic Wood Indus., Inc.*, 187 Ga.App. 471, 370 S.E.2d 765 (1988), *rev'd on other grounds, Atlantic Wood Indus., Inc. v. Argonaut Ins. Co.*, 258 Ga. 800, 375 S.E.2d 221 (1989), however, eviscerate *Ginn's* rationale by severely limiting the effect of "no action" clauses in Georgia.

In *Munday*, the Court of Appeals of Georgia held that a "no action" clause virtually identical to the one in this case did not bar a defendant in a tort action arising out of an automobile accident from impleading as a third-party defendant his automobile liability insurer, State Farm, which had denied coverage and refused to defend the action. Quoting extensively from the discussion of *Jordan v. Stephens*, 7 F.R.D. 140 (W.D.Mo.1945), by Professors Wright and Miller, the *Munday* court stated that "no action" clauses,

" '... if permitted to become effective, should not operate ... [when] ... the third-party defendant is alleged to have breached its contract. According to the third-party complaint, [the insurer] has declined to perform the obligation of its undertaking in any way. It has refused to defend the defendants or third-party plaintiffs and has declined to meet the expenses contemplated by its contract. Under such circumstances it should not be permitted to interpose contractual provisions of a contract it has repudiated.' [7 F.R.D. at 142.]"

323 S.E.2d at 195–96 (quoting 6 C. Wright & A. Miller, Federal Practice and Procedure § 1449 (1971)). Specifically considering "appellee's denial of coverage coupled with its refusal to defend appellant in [the tort] action," the *Munday* court applied the foregoing analysis and held that "the trial court erred in dismissing appellant's third-party indemnity claim against appellee." 323 S.E.2d at 196.

Similarly, in *Argonaut*, the Court of Appeals held that a "no action" clause did not bar an immediate action by an insured for litigation expenses incurred due to her insurer's refusal to defend. The court expressly rejected the *Ginn* court's rationale for holding that the statute of limitations in that case was suspended during the pendency of the underlying tort action:

The Insurers urge ... that ... there is a valid contractual impediment to the Insured's right to assert a claim for the alleged breach of their duty to defend at any time prior to the entry of a "final judgment".... [and] ... rely upon the presence in the policies issued to the Insured of a "no action" clause. There is authority for this proposition advanced by the Insurers. It is not, however, binding authority. See *Ginn v. State Farm, etc., Ins. Co., [supra]*.... Under controlling Georgia authority, the "no action" clause will not ... bar the filing by the insured party himself of a direct prejudgment action for breach of contract against his own liability insurer. *Munday v. State Farm Fire, etc., Co., [supra]*.

370 S.E.2d at 770. Thus, we must abandon *Ginn* and look elsewhere for the rule governing this case.

### B. *Accrual of the Cause of Action*

In *Hoffman v. Insurance Co. of N. America*, 241 Ga. 328, 245 S.E.2d 287 (1978), the Supreme Court of Georgia held:

The statute of limitations begins to run on any given claim on the date the claim accrues—in other words, on the date that suit can first be brought. "When the question is raised as to whether an action is barred by a statute of limitation, the true test to determine when the cause of action accrued is to 'ascertain the time when the plaintiff could first have maintained his action to a successful result.'" *Mobley v. Murray County*, 178 Ga. 388(1), 173 S.E. 680 (1934).

245 S.E.2d at 288, *quoted in, Bryant v. Allstate Ins. Co.*, 254 Ga. 328, 330, 326 S.E.2d 753, 755 (1985). When the claim is for breach of contract, Georgia law provides that "the statute of limitations runs from the time the contract is broken 'and not from the time the actual damage[ ] results or is ascertained.'" *Mobley v. Murray County, supra, quoted in, Space Leasing Assoc. v. Atlantic Bldg. Sys.*, 144 Ga.App. 320, 324, 241 S.E.2d 438, 441 (1977); *see also R.L. Sanders Roofing Co. v. Miller*, 153 Ga.App. 225, 226, 264 S.E.2d 731, 732 (1980). Applying these principles,

the Court of Appeals of Georgia held in *Argonaut* that "[a]n insured's claim for breach of contract *based upon his insurer's failure to provide him with a defense* states a claim for legal relief, notwithstanding the lack of a 'final judgment' against the insured or the existence of a 'no action' clause in the underlying policy." 370 S.E. 2d at 770 (emphasis added). It is in the face of this holding that Hall now concedes that the statute has run on his claim for Allstate's refusal to defend the *Crabtree* action.

Allstate contends that *Argonaut* compels the conclusion that the statute of limitations also has run on Hall's claim for Allstate's refusal to pay. Allstate's argument is that, *if* it breached its contract with Hall, it breached the contract *in its entirety* on March 18, 1982, by *disclaiming coverage* under the policy. According to Allstate, there was, *at most,* one breach of the contract, although that breach might have caused Hall to suffer two distinct forms of damages: those due to Allstate's failure to defend the *Crabtree* case and those due to its failure to pay the *Crabtree* judgment. Relying upon the rule of *Mobley v. Murray County, supra,* "that an action may be begun before substantial damage has been sustained," Allstate argues that entry of the *Crabtree* judgment was not a prerequisite to accrual of Hall's cause of action— even though it was a prerequisite to the determination of Hall's total damages.

Allstate misconstrues the true nature of its contractual obligations to Hall. The theory that Allstate breached the entire contract by disclaiming coverage assumes that all of Allstate's duties under the contract arose at the same time—essentially that there was some singular duty to *extend coverage* under the policy. This assumption, which lies at the heart of Allstate's "single-breach" theory, is wholly incorrect.

Under the contract of insurance, Allstate made two distinct promises. First, Allstate promised to defend Hall in any actions resulting from certain accidents occurring during the policy period. Second, Allstate promised to pay, up to the limits of the

policy, any "damages [Hall was] legally obligated to pay" due to such accidents. Both duties were conditioned upon the occurrence of a "covered accident," and each also was conditioned upon another event. The duty to defend was conditioned upon commencement of a suit against Hall, and the duty to pay was conditioned upon entry of a judgment against Hall.

Assuming for the purposes of Allstate's motion to dismiss that Hall's allegation of coverage is true, both conditions precedent to Allstate's duty to defend Hall had been satisfied when, on March 18, 1982, Allstate disclaimed coverage under the policy—a covered accident had occurred and a lawsuit against Hall had been commenced. Thus, Allstate's duty to defend had arisen by that time, and its refusal to undertake Hall's defense breached that duty, starting the limitations period to run on Hall's claim for damages for the refusal to defend.

When Allstate disclaimed coverage on March 18, 1982, however, Allstate's duty to pay any judgment ultimately entered against Hall in the *Crabtree* case had not yet arisen, as the second condition precedent to that duty, entry of such a judgment, had yet to occur. Therefore, Allstate's March 18, 1982, disclaimer of coverage was, *at most*, an *anticipatory* breach of a duty that had yet to arise.[3] As such, it gave Hall a choice between treating the duty to pay as breached and suing immediately, on one hand, and awaiting the time for performance and suing then, on the other. *Szabo Assoc., Inc. v. Peachtree–Piedmont Assoc.*, 141 Ga.App. 654, 234 S.E.

2d 119, 120 (1977) (under Georgia law, tender of notice of intent not to perform a duty which has yet to arise gives the innocent party an "election of remedies: (1) to accept anticipatory breach as tendered and sue at once for damages, or (2) to treat the contract as remaining in force for the purpose for which it was made"). As nothing in the record indicates that Hall opted to treat the duty to pay as immediately breached, the statute of limitations did not commence to run until the *Crabtree* judgment was entered and Allstate's duty to pay arose.[4]

*Argonaut* is not contrary. In that case, the insurer refused to defend its insured in certain administrative proceedings. Consequently, the insured sued: (1) for a judicial declaration that the proceeding was covered by the policy; and (2) for direct and consequential damages suffered on account of the insurer's refusal to defend. No claim for payment of a judgment was made.

The trial court dismissed the first count for failure to state a claim upon which relief could be granted, but refused to dismiss the second. On cross appeals, the Court of Appeals affirmed the trial court's disposition of each claim. With respect to the declaratory judgment claim, the Court of Appeals found itself bound by a prior Supreme Court of Georgia decision to affirm the trial court's dismissal. 370 S.E.2d at 768. On writ of certiorari, however, the Supreme Court of Georgia reversed, hold-

---

3. We say "at most" because there is apparent authority for the proposition that an action against the insurer must in all cases await determination of the insured's liability to the third party. Thus, one treatise notes:

> Other words in the policy [besides a "no action" clause] may ... be construed as requiring a final judgment. Thus, under a policy requiring the insured to pay any final judgment, there must be such a judgment, and the same is said to be true under a policy insuring against "liability imposed by law."

8 Appleman, Insurance Law and Practice § 4851 (Rev.Vol.1981) (citations omitted); see also *Moores v. Fayette County*, 418 S.W.2d 412 (Ky.1967) (involving insurer's duty to pay damages insured was "legally obligated to pay").

4. The only item in the record approaching an election to treat the disclaimer as an immediate breach of the duty to pay the *Crabtree* judgment is Child's April 8, 1982, letter to Marchetti stating that "we intend to hold [Allstate] accountable for all costs and expenses incurred by [its] failure to defend Mr. Hall and [its] failure and refusal to cover any liability that he may be determined to have." We refuse to construe this letter as such an election, however, as it was unaccompanied by any conduct indicating a belief that Hall had an immediate right to sue. Neither the *Munday* case nor *Argonaut* had yet been decided in 1982, and, at that time, "no action" clauses in Georgia insurance policies were given full effect—even in actions for breach of the insurance contract.

ing that, notwithstanding the "no action" clause,

> insured's should have the same opportunity as insurers to determine in advance the scope of policy provisions. OCGA § 9–4–1 provides:
>
>> The purpose of this chapter [on declaratory judgments] is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and this chapter is to be liberally construed and administered.
>
> Nothing in the statute prohibits an insured's action for declaratory judgment. To sanction it levels the ground for insureds and insurers alike.

*Atlantic Wood Indus., Inc. v. Argonaut Ins. Co.*, 258 Ga. 800, 375 S.E.2d 221, 222 (1989).

With respect to the insured's action for damages suffered due to the insurer's refusal to defend, the Court of Appeals held that the insurer's refusal created an immediate right of action, notwithstanding the policy's "no action" clause. 370 S.E.2d at 770, *quoted supra* at 398. In reaching that conclusion, the Court of Appeals recited the Georgia test for determining when a cause of action which is dependent upon entry of judgment in another case accrues:

> " 'The fact that the decision in a pending lawsuit may largely affect a claimant's rights does not cause his right of action to accrue only upon the termination of such suit. His cause of action accrues independently of it, *except when the pending suit is practically conclusive as to the nature and extent of his rights, or where his success therein is a prerequisite to his right to maintain the new action....*' [Cits.]" *Mobley v. Murray County*, 178 Ga. 388, 396, 173 S.E. 680 (1934).

*Id.* (emphasis added). Applying this test to the facts of the *Argonaut* case, the Court of Appeals reasoned:

> [P]rior to the entry of ... a "final judgment" in the administrative proceedings, the Insured's ultimate *liability* will not be ascertained and ...) the total amount

that the Insured may have been damaged by the alleged breach by the Insurers of their duty to defend will not be determined. However, it is also true that the Insured's ultimate liability in the administrative proceeding is material only to the Insurers' duty to indemnify, not to their duty to provide the Insured with a defense in that proceeding.

370 S.E.2d at 770.

Read together, the court's statement that an insured's "cause of action accrues independently of [the decision in a pending lawsuit], *except when the pending suit is practically conclusive as to the nature and extent of his rights, or where his success therein is a prerequisite to his right to maintain the new action*" and the court's distinction between actions for indemnification and those for damages resulting from an insurer's failure to defend convince us that the Georgia courts, if presented with the issue in this case, would hold that an insured's cause of action for its insurer's refusal to pay an adverse judgment under a liability insurance contract does not accrue until entry of final judgment against the insured, notwithstanding the insurer's prior denial of coverage. There is no doubt but that entry of judgment in such a case is a "prerequisite" to recovery of the amount the insurer refused to pay.

Accordingly, the district's dismissal of Hall's claim for Allstate's refusal to defend the *Crabtree* action is AFFIRMED, the district court's dismissal of Hall's claim for Allstate's refusal to pay the *Crabtree* judgment is REVERSED, and the cause is REMANDED to that court for further proceedings consistent with this opinion.