A02A0449. FEINOUR v. RICKER COMPANY.
(566 SE2d 396)

MILLER, Judge.

The question on appeal concerns when the six-year statute of limitation begins to run on a claim for breach of an express warranty on a new house construction. We hold that the statute begins to run, in this case, from the date on which the builder attempted to repair

the construction defect covered by the warranty, which repair was inadequate. Since the present suit was filed within six years of that date, we reverse the portion of the summary judgment order that was granted in favor of the builder on the breach of express warranty claim. The remainder of the summary judgment order is affirmed.

As this is an appeal from the grant of summary judgment, we review the evidence de novo, construing all inferences in favor of the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). Summary judgment is proper only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

So construed, the evidence showed that Barbara Feinour contracted to buy a house being constructed by the Ricker Company that was clad in synthetic stucco on the exterior walls. The certificate of occupancy on the house issued on September 23, 1993, and the closing took place later that month. On September 30, Ricker agreed to a one-year limited warranty on the house, obligating Ricker to repair or replace defects in construction.

As the year on the limited warranty approached expiration, Feinour on September 18, 1994, notified Ricker of water leakage problems in the master bathroom. Ricker responded that a workman would be sent over to correct the problem, which occurred a few days later on October 3. Although the workman represented that the problem was fixed, the workman only temporarily or cosmetically corrected the underlying problem, which apparently arose out of the general improper installation of the synthetic stucco.

Six years later in 2000, Feinour hired an expert who determined that the improper installation of the synthetic stucco had resulted in major water damage to the infrastructure of the house. Feinour sued Ricker on September 28, 2000, asserting claims for breach of the construction contract, breach of implied warranty, breach of express warranty, fraud in concealing the defects, and negligent construction. The court granted summary judgment to Ricker, holding (1) the tort claims (fraud and negligent construction) expired in 1997, four years after the certificate of occupancy issued, (2) the contract, implied warranty, and express warranty claims all expired on September 23, 1999, six years after the certificate of occupancy issued, and (3) no evidence showed any actual fraud by Ricker that deterred Feinour from discovering her injury sooner.

Feinour appeals, asserting that the express warranty claim did not arise until October 3, 1994 (the date of the attempted repair), and that the cosmetic actions by the workman on that date prevented her from learning the truth sooner. We agree that the express warranty claim did not arise until October 3 but hold that his actions were not

actual fraud that deterred Feinour from learning the truth sooner. Accordingly, we affirm in part and reverse in part.

1. Feinour first argues that the court erred in granting summary judgment on her breach of express warranty claim, which she contends did not accrue until October 3, 1994, when Ricker inadequately repaired the house. We agree and reverse this portion of the judgment.

We have repeatedly held that the six-year statute of limitation set out in OCGA § 9-3-24 applies to contract claims (whether breach of implied warranty, breach of express warranty, or breach of sale/construction contract) by homeowners against professional builder-sellers and have specifically applied this to contract claims arising out of damages caused by water leakage through synthetic stucco. *Rosenheimer v. Tidal Constr. Co.*, 250 Ga. App. 145, 146-147 (2) (550 SE2d 698) (2001); *Hickey v. Bowden*, 248 Ga. App. 647, 648-649 (1) (548 SE2d 347) (2001); *Stimson v. George Laycock, Inc.*, 247 Ga. App. 1, 3-4 (1) (542 SE2d 121) (2000); *Mitchell v. Jones*, 247 Ga. App. 113, 114-115 (1) (541 SE2d 103) (2000). The four-year period set out in OCGA § 9-3-30 (a) applies to related tort claims. *Rosenheimer*, supra, 250 Ga. App. at 146 (1); *Hickey*, supra, 248 Ga. App. at 649 (2). With regard to tort claims and claims for breach of implied warranty and breach of the sale/construction contract, we have held that the applicable statutes of limitation begin to run on the date of substantial completion, i.e., the date that the certificate of occupancy is issued. *Hickey*, supra, 248 Ga. App. at 649-650 (1), (2); see *Rosenheimer*, supra, 250 Ga. App. at 146 (1).[1] Unless those statutes were tolled by actual fraud (discussed in Division 2 below), the fraud, negligent construction, breach of implied warranty, and breach of the sale/construction contract claims brought by Feinour are all barred, since suit was not filed until 2000, more than six years after the certificate of occupancy issued in 1993.

We treat the start date for the breach of express warranty claim differently. *Benning Constr. Co. v. Lakeshore Plaza Enterprises*, 240 Ga. 426, 429 (241 SE2d 184) (1977), held that the contractor's obligation under an express warranty to repair or replace any defects in materials or workmanship does not arise until the landowner notifies the contractor of the alleged defects. "No breach of the 'guarantee' could have occurred until that time." Id. Thus, *Benning Constr.* concluded that the six-year statute of limitation commenced to run from the date that the landowner notified the contractor of the alleged

---

[1] The recent statutory amendment allowing the four-year statute of limitation for torts for synthetic stucco damage to begin running upon discovery does not revive any cause of action that was barred by former law before March 28, 2000. OCGA § 9-3-30 (b) (2). Here the tort claims were barred as of 1997.

defects in construction. Id. at 429-430; see *Howe v. Roberts*, 259 Ga. 617, 618 (1), n. 4 (385 SE2d 276) (1989) ("Since the builder could not have corrected defects per the warranty agreement until he received notice, the statute would have begun running no sooner than [the date on which he received that notice]. [Cit.]"). In *Benning Constr.*, however, the contractor had never attempted to correct the defect. Id. at 426.

*Space Leasing Assoc. v. Atlantic Bldg. Systems*, 144 Ga. App. 320 (241 SE2d 438) (1977), did involve an attempt to repair. There the installer of a roof had expressly warranted the roof for six years from the date of completion. Id. at 321. Construction was completed in May 1969, and the roof began to leak, leading to repair efforts in 1971. Id. at 321-322. Dissatisfied, the owner filed suit in November 1975, which was more than six years after completion of construction, thus mandating summary judgment on the owner's claim for breach of the construction contract. Id. at 324 (2). The court, however, reversed summary judgment on the breach of express warranty claim, explaining that it was "the *refusal to remedy* within a reasonable time, or a *lack of success* in the attempts to remedy which would constitute a breach of warranty." (Citations and punctuation omitted; emphasis in original.) Id. at 325 (4); see *Teledyne Indus. v. Patron Aviation*, 161 Ga. App. 596, 598 (2) (288 SE2d 911) (1982). Thus, the applicable statute of limitation was to run from the time the jury determined that the installer had abandoned its warranty obligations and refused or failed to perform further corrective work. *Space Leasing*, supra, 144 Ga. App. at 327 (4).

Citing *Benning Constr.* and *Space Leasing*, we held in *Versico, Inc. v. Engineered Fabrics Corp.*, 238 Ga. App. 837, 842 (3) (520 SE2d 505) (1999), that the breach of an express warranty to repair or replace did not occur until the warrantor refused to perform further repairs. *Versico* explained that since an express warranty contemplates that the warrantor have an opportunity to remedy any defects, the breach of that warranty does not occur until the warrantor either refuses to remedy the defects or is unsuccessful in remedying the defects. This general principle of contract law applies whether the case is a UCC case or not. Cf. *Ford Motor Co. v. Gunn*, 123 Ga. App. 550, 551 (1) (181 SE2d 694) (1971). Thus, we hold that the breach of Ricker's express warranty obligation did not occur until Ricker attempted unsuccessfully to remedy the defect on October 3, 1994. Since suit on this express warranty was filed within six years of that date, the court erred in granting summary judgment on this claim.

The trial court's reliance on *Gropper v. STO Corp.*, 250 Ga. App. 820, 823-824 (2) (552 SE2d 118) (2001), to reach an opposite conclusion was understandable but misguided, as *Gropper* focused primarily on the statute of limitation start date for breach of an *implied*

warranty and did not specifically analyze the start date for breach of an *express* warranty to repair and replace. Since an express warranty to repair is not breached until the warrantor refuses to repair or inadequately repairs the defect, the statute of limitation on that claim does not commence to run until that obligation is breached. As discussed in *Benning Constr.*, supra, 240 Ga. App. at 429, if the rule were otherwise and the six-year statute of limitation on express warranty claims began to run from the date the structure was substantially completed, then ten-year express warranties would be meaningless, as claims for defects discovered in the seventh, eighth, ninth, and tenth years of the warranty would be outside the statute of limitation.

2. The trial court correctly concluded that no evidence supported a finding that the statutes of limitation applicable to the other contract and tort claims were tolled. In a synthetic stucco case, *Mitchell v. Jones* emphasized:

> To establish fraudulent concealment under OCGA § 9-3-96 sufficient to toll the statute of limitation, the homeowners must prove that (1) [the builder] committed actual fraud involving moral turpitude, (2) the fraud concealed the cause of action from the homeowners and (3) the homeowners exercised reasonable diligence to discover their cause of action despite their failure to do so within the applicable statute of limitation. Moreover, to toll the statute of limitation under OCGA § 9-3-96, the concealment of a cause of action must be by positive affirmative act, not by mere silence. Some trick or artifice must be employed to prevent inquiry or elude investigation or to mislead and hinder the party who has the cause of action from obtaining the information, and the acts relied on must be of an affirmative character and fraudulent.

(Footnotes omitted.) Id. at 117 (3).

Feinour has failed to present any competent evidence rebutting the testimony that at that time of construction, Ricker did not know of any problems associated with the use of synthetic stucco. Indeed, Ricker's CEO used it for cladding his personal home. Such unrefuted testimony shows there was no actual fraud (see *Mitchell*, supra, 247 Ga. App. at 118 (3); cf. *Gropper*, supra, 250 Ga. App. at 824 (3)), and we fail to see how the inadequate attempt to repair the problem in October 1994 would constitute actual fraud. Since the trial court was authorized to hold that the statutes of limitation were not tolled, it did not err in granting summary judgment on the remaining claims (i.e., the claims other than the breach of express warranty claim).

*Judgment affirmed in part and reversed in part. Blackburn, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 6, 2002.

*Charles F. Peebles, Lane R. Frostbaum,* for appellant.
*Weinberg, Wheeler, Hudgins, Gunn & Dial, John M. Hawkins,* for appellee.