**HERSH COMPANIES INCORPORATED,** a Florida corporation, f/k/a Hersh National Painting Co., Petitioner/Cross–Respondent,

v.

**HIGHLINE VILLAGE ASSOCIATES,** a California limited partnership; and Greensview Associates, a California limited partnership, Respondents/Cross–Petitioners.

No. 00SC74.

Supreme Court of Colorado,
En Banc.

July 2, 2001.

Rehearing Denied Sept. 9, 2001.

Faegre & Benson LLP, J. David Arkell, Jessica F. Toll, Denver, CO, Attorneys for Petitioner/Cross–Respondent.

Silver & DeBoskey P.C., Joe L. Silver, Martin D. Beier, Denver, CO, Attorneys for Respondents/Cross–Petitioners.

Justice COATS delivered the Opinion of the Court.

Hersh Companies Inc., the defendant in the underlying action, sought review of the court of appeals' decision in *Highline Village Associates v. Hersh Cos. Inc.*, 996 P.2d 250 (Colo.App.1999), by writ of certiorari. The court of appeals reversed the summary judgment order entered by the trial court, which concluded that the plaintiffs' breach of warranty and breach of contract claims arising out of an allegedly defective paint job were governed by the statute of limitations for actions against contractors, § 13–80–104, 5 C.R.S. (2000), and that the period for commencing such actions had expired. The court of appeals agreed that all of the claims were governed by section 13–80–104 but reversed and remanded for a determination whether the limitations period had been tolled by operation of the "repair doctrine" while Hersh attempted to repair the allegedly defective work. Because the repair doctrine does not apply to either the contract or warranty claims, but the warranty claims were actually governed by a different limitations period and were not yet barred, the judgment of the court of appeals is reversed in part, and affirmed in part.

## I.

The plaintiffs in the underlying action, Highline Village Associates and Greensview Associates, entered into separate contracts with Hersh Companies Inc. in March 1992 to repaint the exteriors of their respective apartment complexes. Both painting contracts guaranteed Hersh's work against defects in material and workmanship for five years.[1]

Hersh began work on both projects in June 1992, completed the work in August

---

1. Both contracts contained the following express warranty language:

   [Hersh] shall guarantee that all work executed under this section will be free from defects of material and workmanship for a period of five (5) year [sic] from date of final acceptance of this work and shall further guarantee that he will, at his own expense, repair and replace all such defective work, and all other damaged thereby, which becomes defective during the term of the guarantee.

1992, and received final payment in September 1992. The plaintiffs first expressed dissatisfaction with the work in January 1993 after noticing that paint was beginning to peel in certain areas. Hersh repainted the areas complained of on various occasions while maintaining that it was not responsible for the peeling problem. On September 13, 1995, the plaintiffs notified Hersh of additional paint failures and again requested repairs pursuant to the contractual guarantees. On this occasion, however, Hersh refused to perform any further work on the basis that the peeling problem was not caused by paint or services provided by Hersh.

On October 23, 1996, the plaintiffs filed their complaint against Hersh for breach of contract and breach of express warranties.[2] Hersh moved for summary judgment on the ground that all of the plaintiffs' claims were governed by section 13–80–104, the statute of limitations applicable to construction contracts, under which a claim arises at the time the claimant discovers or in the exercise of reasonable care should have discovered the physical manifestations of the defect causing injury, and is barred if not commenced within two years of its accrual. Because the plaintiffs' claims had accrued at least by January 1993, at which time plaintiffs first expressed dissatisfaction with the work, Hersh contended that the claims were barred by the statute of limitations when brought in October 1996. The district court agreed, granting summary judgment in favor of Hersh as to both the breach of contract and breach of warranty claims.

The court of appeals reversed, agreeing that section 13–80–104 was the governing statute of limitations but finding genuine issues of material fact concerning whether the statute of limitations period should have been tolled under the "repair doctrine." Citing cases from other jurisdictions, including the federal district of Colorado, the court of appeals described the doctrine with approval as an equitable tolling of the statute of limitations triggered by a contractor's undertaking repair efforts with an express or implied representation that those efforts will remedy the defect. In light of its approval of the repair doctrine, the court of appeals remanded the case for findings bearing upon whether Hersh expressly or impliedly represented that its repair efforts would remedy the defect, and whether the plaintiffs reasonably relied upon those representations in deciding not to institute legal action within the time period dictated by the statute of limitations. Hersh's petition for certiorari followed.[3]

## II.

Well-settled rules of statutory construction aid in the determination of which statute of limitations governs a given matter. As with other statutes, statutes of limitations must be construed so as to ascertain and effectuate the intent of the General Assembly. *Homestake Enters., Inc. v. Oliver,* 817 P.2d 979, 981–82 (Colo.1991). Statutes of limitations serve to promote justice, discourage unnecessary delay, and forestall the pursuit of stale claims. *Dean Witter Reynolds, Inc. v. Hartman,* 911 P.2d 1094, 1096 (Colo. 1996). When more than one statute of limitations could apply to a particular action, the most specific statute controls over more general, catch-all statutes of limitations. *City & County of Denver v. Gonzales,* 17 P.3d 137, 140 (Colo.2001) (employing various rules of statutory construction to determine which of two applicable statutes of limitations governed); *Persichini v. Brad Ragan, Inc.,* 735 P.2d 168, 172–73 (Colo.1987). In determining whether a claim falls within the purview of a particular statute of limitations, consideration should be given to "the nature of the right sued upon and not necessarily the particular

2. The complaint was later amended to include claims for fraud, which were eventually dismissed by stipulation.

3. This court granted certiorari to address the following issues:

Whether the court of appeals erred in reversing the district court's grant of summary judgment in favor of Hersh and holding that the statute of limitations on plaintiffs' claims was tolled by the "repair doctrine."
Whether the contractors' two year statute of limitation applies to breach of warranty claims so as to require a party to sue for breach of warranty even before the warrantor has declined to perform any warranty work.

form of action or the precise character of the relief requested." *Id.* at 172.

■ In general, breach of contract or warranty actions must be filed within the limitations period set forth at section 13–80–101, 5 C.R.S. (2000), which provides in relevant part:

(1) The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within three years after the cause of action accrues, and not thereafter:

(a) All contract actions, including personal contracts and actions under the "Uniform Commercial Code". . . .

Claims for breach of contract or warranty accrue upon discovery of the breach or on the date when, in the exercise of reasonable diligence, the breach should have been discovered. § 13–80–108(6); *see also Goeddel v. Aircraft Fin., Inc.*, 152 Colo. 419, 424, 382 P.2d 812, 815 (1963) ("[A] claim for relief in actions arising out of non-performance of contract obligations accrues at the time of the failure to do the thing required to be done under the contract.").

With regard specifically to claims concerning any deficiency in design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property, section 13–80–104 (the "contractors' statute"), provides a separate limitations period and accrual formula:

**Limitation of actions against architects, contractors, builders or builder vendors, engineers, inspectors and others.** (1)(a) Notwithstanding any statutory provision to the contrary, all actions against any architect, contractor, builder, or builder vendor, engineer, or inspector performing or furnishing the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property shall be brought within the time provided in section 13–80–102 after the claim for relief arises, and not thereafter, but in no case shall such an action be brought more than six years after the substantial completion of the improvement to the real property, except as provided in subsection (2) of this section.

(b) A claim for relief arises under this section at the time the claimant or the claimant's predecessor in interest discovers or in the exercise of reasonable diligence should have discovered the physical manifestations of a defect in the improvement which ultimately causes the injury.

(c) Such actions shall include any and all actions in tort, contract, indemnity, or contribution, or other actions for the recovery of damages for:

(I) Any deficiency in the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property; or (II) Injury to real or personal property caused by any such deficiency; or (III) Injury to or wrongful death of a person caused by any such deficiency.

In this case, the plaintiffs' complaint set forth claims for breach of contract, alleging among other things that Hersh failed to properly prime the wood for painting, and for breach of the express warranties, which guaranteed that the work would be free from defect for five years and that Hersh would repair or replace any such work that became defective during the term of the guarantee. The court of appeals held that all claims were governed by the contractors' statute and accrued upon the first manifestation of the physical defect—the peeling paint—which it concluded had occurred in January 1993. However, the plain language of section 13–80–104 purports only to limit certain types of actions against the persons protected by the statute. § 13–80–104(2)(b); *Homestake Enters.*, 817 P.2d at 983.

Although Hersh may fall within the class of defendants protected by the contractors' statute [4]—contractors engaged in the design, planning, supervision, inspection, construction, or observation of construction of any

---

4. The court of appeals held that under the circumstances of this case the work performed by Hersh constituted an improvement to real property within the meaning of section 13–80–104. Because that issue has not been presented to this court on certiorari, we accept it without comment in assessing the appellate court's application of the "repair doctrine" and in addressing the plaintiffs' warranty claims.

improvement to real property—not all of the claims against Hersh are properly characterized as actions to which the statute applies. Subsection 13–80–104(1)(c) expressly limits the scope of the contractors' statute to actions seeking recovery of damages for "[a]ny deficiency in the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property," or injury to property or person caused by such deficiency. § 13–80–104(1)(c)(I)–(III). While the breach of contract claims allege a deficiency in the original workmanship, the warranty claims seek relief for the defendant's failure to provide its "repair-or-replace" remedy for defects appearing during the term of the guarantee. Because the latter claims seek recovery for the breach of a subsequent contractual duty to repair or replace rather than recovery for a deficiency in the original work, they do not fall within the class of actions governed by section 13–80–104.

Furthermore, the special accrual language of section 13–80–104(1)(b) makes clear that the contractors' statute was never intended to limit claims for breach of warranties to repair and replace. Under section 13–80–104(1)(b), claims accrue when the claimant discovers, or in the exercise of reasonable diligence should have discovered, "the physical manifestations of a defect in the improvement that ultimately causes the injury." Apart from the obvious difficulties in searching for "physical manifestations" of a breach of an agreement to repair, measuring the limitations period for such a claim from the first appearance of defects in the original work could have the undesirable (if not irrational) effect of forcing the warrantee to bring his claim not only in advance of a breach but without even affording the warrantor a full opportunity to comply with the terms of the agreement. In this case, while the physical manifestation of the defect—the peeling paint—was first discovered in January 1993, Hersh continued to make efforts to repair the paint problem until September 1995, at which point it refused to perform any more repairs. Therefore, if the contrac-

tors' statute of limitations, under which the claims would have accrued in January 1993, were applicable, the plaintiffs would have been required to file their claims before January 1995, while Hersh was still making efforts to repair the peeling paint problem. Such an approach would promote unnecessary litigation, in turn compromising business relationships and burdening courts with unripe claims filed by parties seeking to comply with the contractors' statute of limitations.

By contrast, claims for breach of an express warranty are generally governed by the statute of limitations for contract actions, § 13–80–101, and cannot accrue until the breach is discovered or in the exercise of reasonable diligence should have been discovered. § 13–80–108(6). Although this court has not previously addressed the breach of an express warranty to repair or replace in this context, cases applying the Uniform Commercial Code provide a close analogy.[5] The Uniform Commercial Code contains virtually identical accrual language for warranties that explicitly extend to future performance, § 4–2–725(2), 2 C.R.S. (2000). Claims based on similar warranties to repair or replace have been held to accrue when the plaintiff discovers or should have discovered the defendant's refusal or inability to comply by maintaining the goods as warranted in the contract. *See Smith v. Union Supply Co.,* 675 P.2d 333, 335 (Colo.App.1983); *see also Marvin Lumber & Cedar Co. v. Elf Atochem N.A., Inc.,* 223 F.3d 873, 881 (8th Cir.2000) ("The statute of limitations begins to run when the plaintiff discovers or should have discovered the defendant's refusal or inability to maintain the goods as warranted."); *Space Leasing Assocs. v. Atl. Bldg. Sys., Inc.,* 144 Ga.App. 320, 241 S.E.2d 438, 441 (1977); *Cosman v. Ford Motor Co.,* 285 Ill.App.3d 250, 220 Ill.Dec. 790, 674 N.E.2d 61, 68 (1996). There is no apparent reason to define the breach of warranties to repair or replace differently for the sale of goods than for the performance of services.

---

5. The contract and accompanying warranties at issue in this case did not predominantly involve a sale of goods, making the Uniform Commercial Code, §§ 4–2–101 to –725, 2 C.R.S. (2000), inapplicable.

■ It follows from both the limited kinds of actions included and the point in time at which they arise that the contractors' statute was not intended to apply to claims for breach of warranties to repair and replace, even when the party against whom the claim is asserted is within the class of individuals protected by that statute. Instead they are governed by the general statute of limitations for contracts and warranties. Therefore, when a contract contains both an express warranty as to future performance, like the five-year warranty against defect contained in Hersh's contracts, and a repair-or-replace warranty fixing the remedy in the event of a defect, a claim for breach of warranty does not accrue until the plaintiff discovers or should have discovered the defendant's refusal or inability to comply with the warranties made.

In reliance upon *Mohawk Green Apartments v. Kramer,* 709 P.2d 955 (Colo.App. 1985), the court of appeals treated the first observation of peeling paint as the discovery of a physical manifestation of the defect giving rise to both the breach of contract and breach of warranty claims. In *Mohawk Green Apartments,* another panel of the court of appeals held that a plaintiff's breach of warranty claim was governed by the predecessor to section 13–80–104. *Id.* at 956. Unlike the warranty in this case, however, the warranty at issue in *Mohawk Green Apartments* did not explicitly guarantee that the contractor would repair or replace any defective work at its own expense. As the existence of an express repair or replace remedy is precisely what prevents the plaintiffs' breach of warranty claims from being limited by section 13–80–104, *Mohawk Green Apartments* is inapposite to the question whether the warranty claims in this case are controlled by section 13–80–104.

■ As governed by section 13–80–101 and section 13–80–108(6), the breach of warranty claims based on Hersh's failure to repair or replace the allegedly defective work accrued when the breach occurred and was discovered in September 1995—the date upon which Hersh first refused to conduct further repair efforts. In October 1996 the plaintiffs' claims were filed just over one year after their accrual, well within the three-year limit dictated by section 13–80–101. Both the district court and court of appeals erroneously concluded that the warranty claims were limited by section 13–80–104. Based on its belief that the plaintiffs' warranty claims would therefore have been barred, the court of appeals unnecessarily turned to the "repair doctrine," a doctrine of equitable or promissory estoppel, arising from reliance upon Hersh's promise to repair. Although for different reasons, the court of appeals' reversal of the trial court's order dismissing the warranty claims is therefore affirmed.

■ The trial court did not err, however, in concluding that the plaintiffs' breach of contract claims were barred, without regard to the repair doctrine. Because claims for the breach of warranties to repair and replace do not accrue, by statute, until the warrantor either refuses or is unable to comply, fairness does not require an equitable tolling. Whether a claim for relief is couched in terms of a failure to perform in the first instance or a failure to repair defects occurring during the term of the warranty, a plaintiff is not prevented from filing his claim in a timely manner by reliance on a promise to repair as long as his claim for that remedy is preserved. At least where a contract contains an express warranty to repair or replace, the judicially imposed, equitable tolling characterized by the court of appeals as the "repair doctrine" is not applicable.

### III.

Because the plaintiffs' warranty claims are governed by section 13–80–101 and did not accrue until the defendant refused to perform any further work, the trial court erred in dismissing those claims. Because section 13–80–108(6) prevented the plaintiffs' claims for repair or replacement of defective work from accruing during any time the plaintiffs relied on the defendant's promise to repair, the limitations period for neither the plaintiffs' contract nor warranty claims was equitably tolled. The judgment of the court of appeals reversing the district court's entry of summary judgment is therefore affirmed in

part, reversed in part, and remanded for proceedings consistent with this opinion.