(310 P.3d 436)

No. 108,159

GEORGE HEWITT, *et al.*, *Appellants*, v. KIRK'S REMODELING AND CUSTOM HOMES, INC., *Appellee*.

Opinion filed October 11, 2013.

*Mark D. Murphy*, of The Murphy Law Firm, LLC, of Overland Park, for appellants.

*Leonard K. Frischer* and *Kenneth J. Morton*, of Frischer & Schaffer, Chartered, of Overland Park, for appellee.

Before BRUNS, P.J., GREEN and BUSER, JJ.

Buser, J.: This appeal involves a contractual dispute between a home builder, Kirk's Remodeling and Custom Homes, Inc. (Kirk's), and the homeowners, George and Vicki Hewitt (the Hewitts). The Hewitts purchased their newly built home from Kirk's. Upon completion of the construction, Kirk's gave the Hewitts an express warranty that promised to provide a house free from defects in materials or workmanship; Kirk's also promised that if defects arose during the 1-year warranty period, Kirk's would repair

or replace the defects. Immediately prior to the expiration of the warranty period, in keeping with the contract, the Hewitts gave Kirk's written notice of construction defects. Kirk's failed to repair or replace the defects.

More than 5 years after Kirk's provided the Hewitts with the express warranty, but less than 5 years after the Hewitts gave Kirk's written notice of the construction defects, the Hewitts sued Kirk's for breach of contract. Kirk's filed a motion for summary judgment contending the Hewitts had commenced their lawsuit beyond the 5-year statute of limitations for breach of contract actions. The district court agreed with Kirk's and granted summary judgment.

As discussed below, we believe the district court erred in finding the Hewitts did not commence their lawsuit within the statute of limitations. We hold, for purposes of K.S.A. 60-511(1), that a cause of action based upon a builder's express warranty to repair or replace construction defects in a newly built house must be brought within 5 years of the date the builder breached the warranty by refusing or failing to repair or replace the defects. Accordingly, we reverse the district court's summary judgment in favor of Kirk's and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Donnie Kirk, the president of Kirk's, provided an affidavit in support of summary judgment. He alleged that on January 21, 2003, Kirk's entered into a contract with the Hewitts to build a house in Miami County. The contract, showing signatures and that date, was attached to Kirk's motion for summary judgment. The contract provided for a "walk-thru inspection . . . prior to final settlement." It also provided that "[a] construction warranty will be given to the [Hewitts] at signing of contract and will be signed when final walk through is made."

Kirk's alleged as an uncontroverted fact that it "contracted with" Brick Doctor and Brant Jones Masonry "as agents of the Hewitts, and/or for intended benefit of the Hewitts." Kirk's alleged that "Brick Doctor and [Brant] Jones Masonry both worked on the bricks and masonry on the house, and failed to perform their work

in a workmanlike manner." The Hewitts only asserted that Brick Doctor and Brant Jones Masonry were each "Kirk's subcontractor."

Regardless, Donnie's affidavit averred that "[o]n or about December 12, 2003, [the Hewitts] and Kirk's . . . entered into the warranty for the . . . home." Kirk's also attached to its summary judgment motion the construction warranty along with a "Home Enrollment" form signed by the parties, which described it as an "Express Limited Warranty." The warranty had an "Effective Date" of December 12, 2003.

The warranty provided in relevant part:

"Kirk's . . . is the warrantor under this limited warranty and agrees to the following terms and condition[s]. . . .

"I.  WHAT IS COVERED

"A.  During this one year Warranty Term, which commences . . . as indicated on the Home Enrollment form, [*Kirk's*] (the builder) *warrants that this housing unit will be free from:*

 1.  *Defects in materials or workmanship* as defined in the Construction Quality Standards . . . .
 2.  Defects in the electrical, plumbing and mechanical systems as defined in the Construction Quality Standards.

 . . . .

"II.  WHAT KIRK'S . . . WILL DO

"*If a defect occurs on an item during the applicable Warranty Term* which is covered by this warranty, *Kirk's . . . will repair, replace or pay [the Hewitts] the reasonable cost of repairing or replacing the defective item.* Kirk's . . . total liability under this warranty is limited to the final sales price of the home as indicated on the applicable forms. The choice to repair, replace, or pay any combination thereof is solely that of Kirk's . . . . Any repair or replacement shall not extend the Warranty Term.

"III.  WHAT [THE HEWITTS] MUST DO

"If [the Hewitts] should have a complaint on any item covered by this warranty during the applicable Warranty Term, [the Hewitts] must send to Kirk's . . . a clear and specific written complaint. *The written notice must be received by Kirk's . . . no later than seven days after the expiration of the Warranty Term.* With the exception of an emergency problem, [the Hewitts] should wait an initial 30 days after the Warranty Term begins to report any defects as defined in the Construction Quality Standards. This is to allow time . . . to become familiar with the housing unit." (Emphasis added.)

The construction quality standards were set forth in a separate section of the warranty. A preface to the section stated: "The fol-

lowing Construction Quality Standards are expressed in terms of required standards that the Builder's construction must meet. Noncompliance with these construction standards calls for corrective action by Kirk's."

It is uncontroverted that nearly 1 year after the warranty's effective date of December 12, 2003—December 11, 2004—the Hewitts sent Kirk's a letter regarding "Outstanding Warranty Items." In relevant part, the letter stated: "In accordance with our Warranty of December 12, 2003, we are providing a punch list of outstanding warranty items which require attention." The Hewitts acknowledged that "[s]ome of the items on the attached punch list have been somewhat corrected." The Hewitts, therefore, specified the items Kirk's had corrected and those it had not, and they asked Kirk's to "[p]lease get with us as soon as possible on these matters."

Included in the written notice was reference to construction defects in the home's brickwork:

"1. Unsightly and Problematic Brickwork. The leaks in the basement have been repaired on the North and South side of our home by removing brick; and flashing and sealing around the support beam pockets. This was a matter of neglect by your first Subcontractor, The Brick Doctor. We still need the brick problem taken care of near the front door causing leaks in the basement. When removing a small section of the brick on the North and South side of our home, your second brick Subcontractor, Brant Jones, mentioned that he saw brick ties and felt paper. However as Mr. Jones indicated in the conclusion of his letter of November 15, 2003, removing all of the brick and relaying new bricks correctly would be the only totally reliable solution to this problem job. Since Mr. Jones discovered that no felt or other waterproofing material was used above the garage door when removing a 50 to 60 foot section of brick, we are still not certain that felt or waterproofing was used completely around our home."

Kirk's did not repair or replace the defective brickwork or pay the Hewitts to repair or replace it. On June 26, 2008, the Hewitts filed a lawsuit against Kirk's and other entities. Kirk's was served on January 31, 2009, and it eventually moved for summary judgment.

In its motion for summary judgment, Kirk's contended the Hewitts had commenced their contract claim beyond the 5-year statute of limitations provided in K.S.A. 60-511(1). Arguing that "[a] breach of warranty occurs on the date of sale and delivery," Kirk's

cited several cases in support including *Voth v. Chrysler Motor Corporation*, 218 Kan. 644, 545 P.2d 371 (1976), and *Freeto Construction Co. v. American Hoist & Derrick Co.*, 203 Kan. 741, 457 P.2d 1 (1969).

The Hewitts responded to Kirk's motion:

"The statute of limitations could only begin running when the Hewitts notified Kirk's of the defective brickwork. An express warranty like the one provided by Kirk's . . . , by its very terms, contemplates that the contractor would have an opportunity to repair or replace any defective items. If the contractor does so, then the express warranty is not breached."

In support of their argument, the Hewitts cited *Feinour v. Ricker Co.*, 255 Ga. App. 651, 566 S.E.2d 396 (2002).

The district court granted Kirk's motion for summary judgment. In its decision, the district court cited *Freeto Construction Co.* and reasoned:

"[The Hewitts'] argument that the agreement promises replacement is correct, as this clause directs what [Kirk's] will do *if* the warranty is breached. What [the Hewitts] fail to acknowledge in their argument is that before [Kirk's] is obligated to repair, replace or pay, he [*sic*] must have delivered a defective home. Clearly, Kirk's failed to deliver a home free of defects, or this matter would not be pending. Thus, Kirk's breached the contract at the outset. Kirk's breached the contract on the date of delivery, December 12, 2003. The statute of limitations began running on that date, and expired five years hence. As a result, the motion for summary judgment filed by Kirk's must be granted."

The Hewitts moved to alter or amend the judgment, clarifying that "Kirk's did not breach a promise to deliver a home free of defects to the Hewitts; rather, Kirk's breached a promise to correct a defect that the Hewitts identified during the warranty term." The Hewitts argued that "[u]nder the [district] [c]ourt's analysis, the bargained-for warranty period in the parties' contract is meaningless for purposes of when the statute of limitations begins to run. If the warranty is breached upon delivery, then a party has a cause of action upon delivery." But, the Hewitts asserted their cause of action did not accrue until they gave notice to Kirk's as required under the warranty *and* Kirk's failed to repair, replace, or pay the Hewitts for the repair or replacement. In support, the Hewitts

cited *Antigua Condominium v. Melba Investors*, 307 Md. 700, 517 A.2d 75 (1986).

Kirk's responded that the Hewitts' motion was "a rehash of issues" already argued. The district court denied the Hewitts' motion to alter or amend, stating they had presented "no new theory or legal authority." The Hewitts then dismissed the remaining defendants with prejudice and filed this appeal.

## THE STATUTE OF LIMITATIONS AND THE EXPRESS WARRANTY TO REPAIR OR REPLACE

The Hewitts appeal the district court's ruling granting summary judgment for Kirk's because their cause of action for breach of warranty was filed beyond the statute of limitations for contract actions. The Hewitts contend their cause of action only accrued upon breach of that warranty, *i.e.*, when "Kirk's refused to correct a defect, failed to correct a defect, or did not take action to correct a defect within a reasonable time." In short, the Hewitts do not focus their appeal on Kirk's warranty to deliver a house free from defects but on Kirk's breach of the warranty to repair, replace, or pay the Hewitts to repair or replace the construction defects (Repair or Replace Warranty).

In response, Kirk's acknowledges it "promised to deliver a home free from defects and to make repairs if a defect occurs," but it argues that since "[t]he presence of a defect breaches [its] promise to deliver a home free from defects," the Hewitts could have maintained an action "at the commencement of the warranty period, on December 12, 2003."

At the outset, we are guided by the following legal standards regarding summary judgment:

" 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case.

On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citations omitted.]" *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 330, 277 P.3d 1062 (2012).

Additionally, where there are no disputed facts and the appellate court is required to interpret and give legal effect to a written contract, appellate review of a summary judgment order is de novo. *Wittig v. Westar Energy, Inc.*, 44 Kan. App. 2d 216, 221, 235 P.3d 535 (2010), *rev. denied* 292 Kan. 969 (2011).

In the present case, the material facts were undisputed. The parties agreed the December 12, 2003, express warranty was part of the construction contract. There was no dispute regarding the plain language of the express warranty. The parties agreed that, almost 1 year later, on December 11, 2004, the Hewitts sent Kirk's a letter giving timely notice that the brickwork (and other warranty items) were allegedly defective and had not been repaired or replaced. On June 26, 2008, the Hewitts filed the lawsuit at issue in this appeal, which was served on Kirk's on January 31, 2009. Finally, Kirk's candidly conceded it did not repair or replace the brickwork. In short, there are no material facts in dispute and, as a result, we are presented with an issue of law which we review de novo. Of note, we review the warranty language and its legal effect without deference to the district court's interpretation of the warranty. *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011).

K.S.A. 60-511(1) governs the relevant statute of limitations applicable to this issue on appeal. It provides that "[t]he following actions shall be brought within five (5) years: (1) An action upon any agreement, contract or promise in writing." For purposes of the statute of limitations, "[t]he test to determine when an action accrues is that point when a plaintiff could have first filed and prosecuted an action to a successful conclusion." *Jeanes v. Bank of America*, 296 Kan. 870, 874, 295 P.3d 1045 (2013).

The district court found the Hewitts' cause of action could have commenced on December 12, 2003, the effective date of the express warranty and the date it was delivered to the Hewitts. Under this interpretation, the Hewitts' lawsuit was impermissibly commenced beyond the 5-year statute of limitations. On the other

hand, the Hewitts contend the earliest date their cause of action could have commenced was when the Repair or Replace Warranty was breached. Under the Hewitts' interpretation, their cause of action could have begun—at the earliest—on December 11, 2004, which was the date they sent written notice to Kirk's requesting repair or replacement of the construction defects. If the Hewitts' understanding is correct, their lawsuit was properly filed within the applicable 5-year statute of limitations and the district court erred in granting summary judgment to Kirk's.

Given the undisputed facts and the parties' competing legal contentions, the question presented on appeal is straightforward: When did the Hewitts' cause of action for breach of the Repair or Replace Warranty accrue?

We begin to answer this question with a brief review of Kansas caselaw cited by the district court and Kirk's. The district court was persuaded by the precedent in *Freeto Construction Co.*, 203 Kan. 741. In that case, Freeto Construction Co., purchased a truck crane from the manufacturer on May 7, 1959. More than 5 years later, on September 25, 1964, the crane failed when two large bolts used in its manufacture gave way. This failure caused "the load to shift and fall, extensively damaging the crane and the load which consisted of a section of an asphalt plant." 203 Kan. at 742.

On September 24, 1966, the buyer filed a negligence action which was eventually treated as a contract claim. The district court granted summary judgment for the defendants, ruling that the contract claim failed because it was barred by the applicable statute of limitations. The plaintiff appealed. One question on appeal was whether the action was barred by the 5-year statute of limitations period for "action on a written contract." 203 Kan. at 744-45. The contractual provision in controversy was an express warranty dating from the sale of the crane in 1959, although the contract terms were not detailed in the opinion.

Our Supreme Court affirmed the district court, holding that the warranty began on the delivery date of the crane because "[i]n this case the breach occurred when the crane was sold and delivered, having been allegedly designed and assembled in a manner inadequate to sustain the warranted load capacity." 203 Kan. at 746.

The Supreme Court also addressed Freeto Construction Co.'s., alternative contention "that even though its action is for breach of contract, nevertheless the trial court erred in finding the warranty sued upon to be a present warranty rather than prospective and continuing." 203 Kan. at 747. Our Supreme Court rejected the construction company's argument, noting that "there are no facts in the record suggesting a warranty as to the condition or capability of the crane on a date more than five years after its sale and delivery." 203 Kan. at 747. Finally, the Supreme Court added that while the newly enacted Uniform Commercial Code (U.C.C.) did not apply to this transaction, "we believe the provisions of K.S.A. 84-2-725 to be substantially in accordance with the decisions of this court." 203 Kan. at 748.

Several years later, our Supreme Court in *Voth* considered the implications of the U.C.C. upon the statute of limitations for contracts for sale of goods as set forth in K.S.A. 84-2-725. That statute provided: "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." K.S.A. 84-2-725(1). It further provided:

"A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." K.S.A. 84-2-725(2).

The buyer in *Voth* purchased a new Chrysler automobile on August 8, 1969. The manufacturer provided a 12-month express warranty " 'against defects in material and workmanship in normal use . . . .' " 218 Kan. at 647. The manufacturer also promised that "[a]ny part of this vehicle found defective under the conditions of this warranty will be repaired or replaced." 218 Kan. at 647.

On June 27, 1974, Voth filed a petition alleging, in relevant part, a breach of Chrysler's express warranty that the vehicle was " 'safe for use.' " 218 Kan. at 645. Voth sought damages for inhaling " 'large amounts of gasoline fumes' " caused by the defective vehicle. 218 Kan. at 645. Voth alleged the defect was " 'a plugged gasoline tank vent tube which caused raw gasoline to be spewed upon various parts of the undercarriage . . . , the vapors of which

were subsequently gathered by the air conditioning system . . . and dispersed throughout the automobile.' " 218 Kan. at 646. As a result of this defect, Voth alleged he contracted lead poisoning which caused him great bodily harm, past and future medical expenses, and loss of past and future income.

The petition was filed about 4 years and 10 months after Voth purchased the vehicle, but 5 days short of 4 years after Voth discovered the defect. Voth contended the vehicle's defect " 'was the type of occurrence which was explicitly extended to the future performance of the automobile pursuant to Kansas Statutes Annotated 84-2-725(2).' " 218 Kan. at 646. The defendants filed a motion for summary judgment claiming, among other defenses, that Voth's claim was barred by the 4-year statute of limitations for actions involving contracts for sale of goods. The district court agreed and granted summary judgment to the defendants.

On appeal, both parties acknowledged that "the issue is controlled by 84-2-725." 218 Kan. at 647. Our Supreme Court stated the question as follows: "Does the warranty here *explicitly* extend to future performance *and* must discovery of the breach await such future performance?" 218 Kan. at 648. The Supreme Court disposed of the first question: "The obligation of the warranty is to repair or replace . . . any part of the vehicle found defective under the conditions of the warranty. It does not warrant performance without malfunction during the term of the warranty." 218 Kan. at 648. Our Supreme Court ruled against the buyer on the second question as well, reasoning with citation to *Freeto Construction Co.*, that because any defect existed upon delivery, discovery of the breach did not necessarily await future performance. 218 Kan. at 650-51.

We believe the district court's and Kirk's reliance on *Freeto Construction Co.* and *Voth* is misplaced. Both cases are distinguishable from the present case and, as a result, these cases do not provide helpful precedent in resolving the question on appeal.

First, *Voth* is a U.C.C. case involving the sale of goods, and its predecessor, *Freeto Construction Co.*, could have been, given its facts. Even Kirk's candidly concedes on appeal that "the U.C.C. does not apply to this case." We agree. As our Supreme Court has

noted elsewhere, "none of the [U.C.C. warranty provisions] apply to agreements between homeowners and contractors supplying services in the construction of the homeowners' residence." *David v. Hett*, 293 Kan. 679, 699, 270 P.3d 1102 (2011).

Second, the plaintiffs in *Freeto Construction Co.* and *Voth* were claiming a breach of warranty based on a broken promise to provide vehicles at the time of purchase that were not defective in design, material, and workmanship. In contrast, the Hewitts did not predicate their lawsuit on the Kirk's breach of the express warranty to deliver the house free of construction defects. Rather, the Hewitts claimed a breach of warranty based on a different broken promise—to repair or replace the construction defects or pay the Hewitts' to repair or replace the defects. This difference is especially noteworthy in *Voth* where—although the contract for sale clearly provided for repair and replacement of the vehicle defect—Voth did not sue for damages due to Chrysler's failure to repair or replace the vehicle's plugged gasoline tank vent tube. On the contrary, Voth sued for damages arising from the breach of Chrysler's promise to provide him with a vehicle free of defects.

Having considered the caselaw offered in support of Kirk's legal position and finding it not applicable to the present case, we turn to Kansas real property law. There, we find some guidance in *Wilder v. Wilhite*, 190 Kan. 564, 376 P.2d 797 (1962). In *Wilder*, a grantor of land in 1947 provided a warranty deed with the following "warranty provision": " 'The said Grantor covenanting that said premises are free and clear of all encumbrances, and that she will Warrant and Defend the title against the lawful claims and demands of all persons whomsoever.' " 190 Kan. at 565. Ten years later, in 1957, the buyers purchased the land without knowing that the grantor had not held title.

In 1959, the buyers attempted to sell the land. This was the first time the buyers learned of adverse claims on the title. The buyers were forced to litigate these claims and incurred expenses. In 1961, the buyers brought an action against the grantor for damages.

The grantor defended the lawsuit by arguing that "the alleged breach of covenant, if any, against encumbrances incurred when the covenant was made in 1947, and is barred by the five year

statute of limitations." 190 Kan. at 567. Our Supreme Court disagreed. It determined:

"It is readily apparent . . . this action is founded upon the covenant that the grantor will warrant and defend the title against the lawful claims and demands of all persons whomsoever. There is nothing to indicate the action is founded upon the covenant that the premises are free and clear of all encumbrances." 190 Kan. at 565.

The Supreme Court further instructed that "[t]he statute of limitations begins to run against a cause of action for breach of a warranty to defend the title against the lawful claims and demands of others only from the time of actual or constructive eviction of the covenantee or his assignee." 190 Kan. at 567.

*Wilder* is factually more analogous to the present case than *Freeto Construction Co.* or *Voth.* Our Supreme Court in *Wilder* held that the buyers did not have a cause of action for breach of the warranty to defend title until the grantor had breached *that* particular warranty. We believe the same is true here. The Hewitts could not have prosecuted an action for breach of the Repair or Replace Warranty until Kirk's had breached that particular warranty. This is in keeping with the general rule that "a party seeking damages for breach of warranty must prove the warranty, *the breach thereof*, and the loss that resulted from the breach." (Emphasis added.) *Sours v. Russell*, 25 Kan. App. 2d 620, Syl. ¶ 1, 967 P.2d 348 (1998), *rev. denied* 267 Kan. 887 (1999).

In this regard, the plain language of the Repair or Replace Warranty provided by Kirk's is important. In a dispute over title defects, our Supreme Court similarly focused on the contractual language:

"The language used is explicit and the import and materiality of the dates . . . are made clear. The provisions of the contract, in this regard, must be given the effect stated in the clear language employed. The law presumes that the parties understood their contract and that they had the intention which its terms import. [Citation omitted.] It is not the function of courts to make contracts, but to enforce them as made [citation omitted], nor is it within the province of the court to reform an instrument by rejecting words of clear and definite meaning and substituting others therefor. [Citations omitted.]" *Tri-State Hotel Co., Inc. v. Sphinx Investment Co., Inc.*, 212 Kan. 234, 246, 510 P.2d 1223 (1973).

In the present case, if we take the Repair or Replace Warranty language at face value, Kirk's could not have breached its promise

until it had been given written notice by the Hewitts and either refused or failed to repair or replace the defects. These were duties Kirk's had taken upon itself, and we assume it did so for good reasons. If nothing else, we can assume Kirk's contractual duties under the Repair and Replace Warranty provided some welcome assurance to the Hewitts as they considered whether to enter into a contract to build the house.

Absent protections provided by contract or by law, buyers of real property in Kansas take under the principle of caveat emptor. See *Graham v. Lambeth*, 22 Kan. App. 2d 805, 807, 921 P.2d 850 (1996); *Heinsohn v. Motley*, 13 Kan. App. 2d 66, Syl. ¶ 2, 761 P.2d 796 (1988); *Miles v. Love*, 1 Kan. App. 2d 630, 633, 573 P.2d 622, *rev. denied* 225 Kan. 845 (1997). "Kansas has recognized an implied warranty of fitness in the sale of new housing, at least when the seller built the house." 1 Kan. App. 2d at 633 (citing *McFeeters v. Renollet*, 210 Kan. 158, 165, 500 P.2d 47 [1972]). But "the application of warranty law offers very limited protection for homeowners because the nature of home defects, and the damages that arise from them, often are not discoverable until after a warranty period would expire." *David*, 293 Kan. at 699-700. And unless the parties specifically agree otherwise, any agreements made before execution of the deed merge into the deed. See *Blair Constr., Inc. v. McBeth*, 273 Kan. 679, Syl. ¶ 3, 44 P.3d 1244 (2002).

With this in mind, a seller might offer "[a] warranty that survives closing" as an "invitation to [a buyer] to cease investigating the subject matter of seller's warranty and to accept the substitution of seller's contractual liability for some bargained-about aspect of the property." 12 Thompson on Real Property § 99.06(a), p. 268 (2d Thomas ed. 2008). Because "from seller's perspective, the costs of sale are now indeterminate, uncertain and uncontrollable," sellers will "seek to limit their liability" rather than leave it open-ended. 12 Thompson on Real Property § 99.06(a), p. 268. The "[s]eller's willingness and ability to make representations and warranties concerning the condition of the property will depend upon the relative negotiating strength of the respective parties, the length of time the seller has owned the property . . . , and the

identity of the seller . . . ." 12 Thompson on Real Property §
99.06(a)(1)(B), p. 269.

In the present case, the parties mutually entered into a contract
mitigating the risks borne by each other. The Hewitts' risk that the
house had construction defects was mitigated by Kirk's promise to
repair or replace the defects provided the Hewitts gave written
notice. On the other hand, Kirk's risk of liability was mitigated by
the prescribed remedies, time period, other conditions precedent,
and by the total dollar limitation.

We are not persuaded by the argument that the Hewitts had
actual notice of the defects when Kirk's presented the express war-
ranty on December 12, 2003. The Hewitts may have had such
notice, but nothing in this record proves the Hewitts also knew
Kirk's would refuse to repair or replace those defects as promised.
We will not limit the enforceability of the Repair or Replace War-
ranty, thereby increasing the Hewitts' risk by starting the statute
of limitations clock before Kirk's could have breached that partic-
ular warranty.

Moreover, in their brief, the Hewitts point out the district court's
ruling, if upheld on appeal, would establish precedent that would
hamper a party's ability to negotiate certain warranties. For ex-
ample, a buyer of real estate might want a longer warranty to repair
or replace, but a statute of limitations period running from delivery
of the warranty would essentially limit all such warranties to 5 years.
A buyer who is a party to a residential construction contract might
be required to file a potentially needless lawsuit in order to pre-
serve the buyer's warranty rights when there were unresolved re-
quests for repair or replacement made just prior to the expiration
of the statute of limitations period. These considerations bolster
our reading of Kansas law that the statute of limitations clock
should start upon breach of the Repair or Replace Warranty.

We also find support for our conclusion in caselaw from foreign
jurisdictions. In a case cited by the Hewitts, *Feinour v. Ricker Co.*,
255 Ga. App. 651, 566 S.E.2d 396 (2002), a buyer contracted to
purchase a house from a builder. The builder "agreed to a one-
year limited warranty on the house, obliging [it] to repair or replace
defects in construction." 255 Ga. App. at 652. As the 1-year period

approached expiration, the buyer notified the builder of water leakage. The builder attempted repair, but "the workman only temporarily or cosmetically corrected the underlying problem, which apparently arose out of the general improper installation of the synthetic stucco." 255 Ga. App. at 652.

Six years later, the buyer hired an expert who identified the problem. The buyer brought suit under multiple theories, including breach of express warranty. The statute of limitations for contract claims in Georgia was 6 years, and the district court held that "the contract, implied warranty, and express warranty claims all expired . . . six years after the certificate of occupancy issued." 255 Ga. App. at 652.

The buyer appealed, contending the "breach of express warranty claim . . . did not accrue until . . . [the builder] inadequately repaired the house." 255 Ga. App. at 653. The Court of Appeals of Georgia agreed: "Since an express warranty to repair is not breached until the warrantor refuses to repair or inadequately repairs the defect, the statute of limitation[s] on that claim does not commence to run until that obligation is breached." 255 Ga. App. at 655. The facts in *Feinour* are similar to the present case, and we are persuaded by the reasoning of the Georgia court.

A similar analysis was used in *Hersh Companies v. Highline Village Assoc.*, 30 P.3d 221, 222 (Colo. 2001), where a painting contractor provided an express warranty to owners of two apartment complexes to repaint the exteriors of the buildings. The contractor warranted that its work would be free from defects and that any defects would be repaired or replaced. Problems arose, some of which the contractor repaired, but eventually the contractor refused to make further repairs, claiming the problems were not attributable to its work. The Colorado Supreme Court held the breach of express warranty occurred when the painter first refused to repair, and the statute of limitations began to run only upon that refusal. 30 P.3d at 225-26.

We find another case cited by the Hewitts, *Antigua Condominium v. Melba Investors*, 307 Md. 700, 517 A.2d 75 (1986), provides further guidance in resolving this appeal. In this case, the buyers of condominiums sued the sellers beyond Maryland's 3-year statute

of limitations for civil actions. The issue on appeal was interpreting the contract, specifically its "key provision":

" 'Seller will make any necessary repairs, adjustments or replacements to the condominium unit and item of personal property specified herein or the common elements of the condominium required as the result of faulty construction, faulty material, faulty manufacture or faulty installation, provided that notice of the defect shall be given Seller within a period of one (1) year accounting from the date of settlement under this Contract.' " (Emphasis added.) 307 Md. at 713.

After discussing caselaw from several jurisdictions, the Court of Appeals of Maryland stated:

"We do not interpret the Repair Clause as simply a warranty of the condition of a unit or of the common elements as of the time of closing with a Unit Owner. Had [sellers] simply guaranteed the condition of the property as of the date of closing with a Unit Owner, any breach of that guarantee would necessarily occur at closing and, absent a special statute, the cause of action would accrue for limitations purposes when the breach was discovered. [Citation omitted.] Here, however, [sellers] additionally promised to repair if notified timely. The breach of that covenant to repair does not occur at closing or necessarily when notice is given. Conceptually, the ways in which one who has contracted to repair could breach that contract include repudiating the obligation before any notice is given, or, after being on notice of the defect, failing to undertake the repairs within a reasonable time, expressly refusing to repair, or, after undertaking to repair, abandoning the work before completion. [Citations omitted.]" 307 Md. at 715-16.

*Antigua Condominium* is factually similar to the present case, and its reasoning is consonant with *Feinour* and *Hersh Companies*. Kirk's argues this precedent is "not helpful" because, unlike Kansas (see K.S.A. 60-511[1]), Maryland has a discovery rule similar to the Colorado discovery rule in *Hersh Companies*. But the different discovery provisions have no applicability to the resolution of the issue on appeal. The relevant issue in these cases was not when the defect was discovered but whether the statute of limitations period on a Repair or Replace Warranty begins to run from the breach of the warranty to repair or replace. In *Feinour, Hersh Companies*, and *Antigua Condominium*, the respective courts decided, as we do, that the statute of limitations period runs from the breach of the Repair or Replace Warranty.

Other states are in accord. The Court of Appeals of New York concluded the statute of limitations started to run from the date

on which the builder refused to make repairs and not the day the buyer knew or should have known of the defects. *Bulova Watch v. Celotex Corp.*, 46 N.Y.2d 606, 415 N.Y.S.2d 817, 389 N.E.2d 130 (1979). In *Bulova Watch*, a roofing material supplier failed to honor its express promise to " 'at its own expense make any repairs . . . that may be necessary to maintain said Roof . . . in a water-tight condition.' " 46 N.Y.2d at 609. The supplier argued, under the prospective warranty doctrine, that a cause of action—and hence the running of the statute of limitations—for breach of warranty accrues when the breach is or should have been discovered.

The Court of Appeals disagreed and found the prospective warranty doctrine not dispositive, noting that the supplier "did not merely guarantee the condition or performance of the goods, but agreed to perform a service—to repair the roof." 46 N.Y.2d at 612. Accordingly, the court found the statute of limitations began running "each time a breach of the obligation to repair the bonded roof occurred." 46 N.Y.2d at 611.

The Supreme Court of Utah made a similar holding in *Lipscomb v. Chilton*, 793 P.2d 379 (Utah 1990). There, the seller constructed a roof for the buyer and provided a 1-year warranty. Shortly after the roof was constructed, the buyer noticed leaks, and the seller made repairs pursuant to the warranty. When the roof began to leak again, the seller refused to make the repairs even though the roof was still covered by the warranty. The seller contended the statute of limitations began running when the buyer first discovered the leaks, shortly after the beginning of the 1-year warranty. Alternatively, the seller contended the statute began running when the buyer's attorney made a written demand for the cost of the roof repairs.

The Supreme Court of Utah disagreed with the seller's legal proposition. It held:

"[W]hen defects were discovered in the roof shortly after the agreement was entered into, the sellers responded as was their duty and made necessary repairs. There was no breach of the warranty at that time. Later, but still during the 1-year period, the buyers again observed defects in the roof and had their attorney make written demand upon the sellers for $1,150 for necessary roof repairs. It was only when the sellers did not respond to the demand either by paying the

$1,150 or by making the repairs themselves that a cause of action for breach of warranty arose in the buyers. At that time, the 6-year statute of limitations . . . commenced to run." 793 P.2d at 381.

See also *Beaudry Motor Co. v. New Pueblo Constructors*, 626 P.2d 1113, 1114-15 (Ariz. App. 1981) (the statute of limitations began to run when the builder refused to make repairs, not upon expiration of the warranty); *Fowler v. A & A Company*, 262 A.2d 344, 347-48 (D.C. 1970) (the statute of limitations began to run when the builder refused to make repairs, not when buyer knew or should have known of the existence of the defect).

Having surveyed analogous Kansas real property law and the relevant laws of foreign jurisdictions, we hold, for purposes of K.S.A. 60-511(1), a cause of action based upon a builder's express warranty to repair or replace construction defects in a newly built house must be brought within 5 years of the date the builder breached the warranty by refusing or failing to repair or replace the defects.

On a related matter, Kirk's briefly mentions that it also alleged in its summary judgment motion that, regardless of the statute of limitations issue, the brick work was performed by agents of the Hewitts and the defects, therefore, were not covered by the terms of the express warranty. As noted earlier, the Hewitts contested this allegation and asserted the brick work was performed by Kirk's subcontractors who were referenced in the express warranty. Because the material facts necessary to resolve this issue were clearly controverted and the district court did not grant summary judgment to Kirk's on this basis, we decline to review it on appeal.

Finally, the district court did not make a finding on when Kirk's may have breached the specific Repair or Replace Warranty. But neither party suggests it could have been before the Hewitts sent their written notice to Kirk's on December 11, 2004. Given the undisputed fact that the Hewitts commenced their lawsuit on January 31, 2009, we hold their cause of action was not barred by K.S.A. 60-511(1).

Reversed and remanded.

524

＊ ＊ ＊

GREEN, J., dissenting: I would affirm the judgment for the reasons stated by the trial court. Accordingly, I dissent. In its decision, the trial court noted that Kirk's Remodeling and Custom Homes, Inc. (Kirk's) failed to "repair, replace, or pay the HOME-BUYER(S) the reasonable cost of repairing or replacing the defective item."

The trial court further noted that before Kirk's would have been obligated to repair or fix any defects in the home, a breach of warranty would have had to occur. In holding that Kirk's failed to deliver a home free of defects, the trial court properly concluded that Kirk's breached the warranty at the outset. Thus, the trial court correctly held that Kirk's breached the warranty on the date of delivery of the warranty or the completion of the home, which both occurred on December 12, 2003, and that the 5-year statute of limitations under K.S.A. 60-511(1) began to run from that date. As a result, the trial court properly concluded that the Hewitts' action was barred, since their action did not begin until Kirk's was served on January 31, 2009, more than 5 years after the delivery of the warranty or the completion of the home.

The narrow question in this case is when the statute of limitations began to run for the purposes of this action. The majority reaches this pivotal question by holding: "We hold, for purposes of K.S.A. 60-511(1), a cause of action based upon a builder's express warranty to repair or replace construction defects in a newly built house must be brought within 5 years of the date the builder breached the warranty by refusing or failing to repair or replace the defects." Slip op. at 20. Nevertheless, K.S.A. 60-511(1), which applies to contract-related actions, does not contain language regarding accrual upon a builder refusing or failing to repair or replace defects. In fact, our Supreme Court has held that "[a] cause of action for breach of contract accrues when a contract is breached . . . , irrespective of any knowledge on the part of the plaintiff or of any actual injury it causes." *Pizel v. Zuspann*, 247 Kan. 54, 74, 795 P.2d 42, *modified on other grounds* 247 Kan. 699, 803 P.2d 205 (1990).

Moreover, the majority's holding hinges on its contention that *Freeto Construction Co. v. American Hoist & Derrick Co.*, 203 Kan. 741, 746, 457 P.2d 1 (1969), is distinguishable from the facts of this case and, thus, *Freeto* does not control the outcome of this case. The majority is incorrect when it holds that *Freeto* is distinguishable from this case. In *Freeto*, our Supreme Court held that a cause of action for a breach of warranty, express or implied, accrues when the breach occurs, not as in a tort action, when the first injury occurs. 203 Kan. at 746.

Like *Freeto*, the parties in this case dispute when the breach occurred. Nevertheless, the defects in the workmanship on the house were apparent when the Hewitts took possession of the house. Brant Jones, the owner of Brant Jones Masonry, referred to repairs and problems with the brickwork of the Hewitts' home in a letter dated November 15, 2003, to "Mr. Kirk and Mr. [a]nd Mrs. Hewitt." In the opening paragraph of his letter, Jones stated the following: "I recently was employed by you and Mr. [a]nd Mrs. Hewitt to do some repair on the brick on their new home near Hillsdale. This letter will be a report of the various problems with the job that I discovered while repairing the brickwork." In the closing paragraphs of Jones' letter, he pointed out some major problems with the brickwork:

"My bid was some $8000 for the work that I performed, and I could have easily doubled the bid to tear out more work that did not appear to be professionally done. It appeared to me that both the contractor and the homeowner were trying to be as reasonable as possible in the repair of items that seemed major.

"My conclusion is that this job doesn't look too bad now, but some serious issues are still unanswered, that of the lack of the vapor barrier and the absence of wall ties in the areas that I repaired. I told the contractor early on that removing all of the brick and relaying new bricks correctly would be the only totally reliable solution to this problem job."

Obviously, the home was defective when the construction was completed and the warranty delivered on December 12, 2003.

Turning to our Supreme Court decision in *Freeto*, I note that Freeto filed suit to recover damages from the breakdown of a truck crane sold to Freeto by American Hoist. Our Supreme Court specifically addressed when a cause of action accrues in a breach of

contract claim. The *Freeto* court held that "whether it be for breach of an express or of an implied warranty the action accrues at the time of breach." 203 Kan. at 746. In *Freeto*, the court held that the breach occurred when the crane was sold and delivered, because it was designed and assembled in an inadequate manner to sustain the warranted load capacity. 203 Kan. at 746.

In reaching this conclusion, the *Freeto* court relied on the holding in *Crabb v. Swindler, Administratrix*, 184 Kan. 501, 507, 337 P.2d 986 (1959). In *Crabb*, an action was brought against the estate of a deceased plumbing contractor to recover damages resulting from the negligent and unworkmanlike installation of plumbing fixtures. The *Crabb* court held that the warranty was breached when the plumbing was installed and the job completed. 184 Kan. at 507-08. The *Crabb* court further stated: " 'A cause of action in contract accrues at the time of the breach or failure to do the thing agreed to, irrespective of any knowledge on the part of the plaintiff or of an actual injury it has occasioned him.' " 184 Kan. at 507.

More recently, in *Law v. Law Company Building Assocs.*, 295 Kan. 551, 289 P.3d 1066 (2012), our Supreme Court again considered when a cause of action accrues in a breach of contract claim. In *Law*, our Supreme Court interpreted K.S.A. 60-511(1) and determined that the Kansas Legislature had not provided a discovery exception in K.S.A. 60-511; therefore, contract actions accrue on breach, not when the breach is discovered. 295 Kan. at 576. The issue in *Law* involved a claim to reform an executory contract because of a mutual mistake. The parties disputed whether the statute of limitations began to run on discovery of the mutual mistake or whether it began to run on execution of the agreement, which was when the mutual mistake was actually made. Our Supreme Court discussed a long line of cases that support the general rule that contract actions accrue on breach, not when the breach is discovered. See 295 Kan. at 566-75. This "accrual-upon-execution rule" has been around for over a century and "derives from a long-standing rule that contract actions accrue as soon as the right to maintain a legal action arises." 295 Kan. at 574.

The *Law* court ultimately held that "a cause of action for breach of contract accrues on the date of breach, not the date of discovery,

and, likewise, a cause of action for reformation of a contract based on mutual mistake accrues on the date of mistake, not the date of discovery of the mistake." 295 Kan. at 574. Our Supreme Court further held that whether the contract is executed or executory does not make a difference in determining the date when a statute of limitations begins to accrue. 295 Kan. at 574-75.

The Hewitts' cause of action accrued on December 12, 2003, when their home was completed and when they signed the warranty. It is readily apparent that the breach occurred on the date of delivery of the December 12, 2003, warranty because the Hewitts' letter to Kirk's, dated December 11, 2004, still referred to the defects that existed in the brickwork before delivery of the warranty and the completion of the home on December 12, 2003:

"1. Unsightly and Problematic Brickwork. The leaks in the basement have been repaired on the North and South side of our home by removing brick; and flashing and sealing around the support beam pockets. This was a matter of neglect by your first Subcontractor, The Brick Doctor. We still need the brick problem taken care of near the front door causing leaks in the basement. When removing a small section of the brick on the North and South side of our home, your second brick Subcontractor, Brant Jones, mentioned that he saw brick ties and felt paper. However as Mr. Jones indicated in the conclusion of his letter of November 15, 2003, removing all of the brick and relaying new bricks correctly would be the only totally reliable solution to this problem job. Since Mr. Jones discovered that no felt or other waterproofing material was used above the garage door when removing a 50 to 60 foot section of brick, we are still not certain that felt or waterproofing was used completely around our home."

The majority supports its holding based on caselaw from foreign jurisdictions. For example, the majority relies on *Feinour v. Ricker Co.*, 255 Ga. App. 651, 566 S.E.2d 396 (2002). As stated earlier, the *Freeto* court held that a cause of action for a breach of warranty, express or implied, accrues when the breach occurs, not as in a tort action, when the first injury occurs. 203 Kan. at 746. To the contrary, the *Feinour* court treats the statute of limitations start date for a breach of an express warranty claim differently from the statute of limitations start date for a breach of an implied warranty. Unlike *Freeto*, the *Feinour* court held that a breach of an express warranty "does not arise until the landowner notifies the contractor of the alleged defects." 255 Ga. App. at 653. In explaining the

statute of limitations start date for a breach of an express warranty to repair and replace, the *Feinour* court stated: "Since an express warranty to repair is not breached until the warrantor refuses to repair or inadequately repairs the defect, the statute of limitation[s] on that claim does not commence to run until that obligation is breached." 255 Ga. App. at 655.

Nevertheless, the *Feinour* court affirmed the trial court's holding that the applicable 6-year statute of limitations barred Feinour's claims for breach of the construction contract and breach of the implied warranty. 255 Ga. App. at 655. As a result, except for the statute of limitations start date for a breach of an express warranty, Georgia's statute of limitations start date for a breach of contract or breach of an implied warranty is similar to Kansas caselaw. For example, in *Feinour*, the record showed that the certificate of occupancy on Feinour's house was issued on September 23, 1993. The *Feinour* court stated that unless the applicable 6-year statute of limitations was tolled by actual fraud, the "breach of implied warranty and breach of the sale/construction contract claims brought by Feinour are all barred, since suit was not filed until 2000, more than six years after the certificate of occupancy issued in 1993." 255 Ga. App. at 653.

The *Feinour* court along with many of the cases cited by the majority treats a breach of an express warranty to repair and replace as an executory contract. An executory contract is a contract whose conditions or promises have not been fully performed; that is, one party or both have something yet to perform. Here, the contract seemed to be executed as to the Hewitts but partially executory as to Kirk's. Kirk's still had an obligation to perform under the written warranty. Nevertheless, as stated earlier, the *Law* court held that whether the contract is executed or executory does not make a difference in determining the date when a statute of limitations begins to accrue. 295 Kan. at 574-75.

In summary, defects existed in the quality of the workmanship in assembling the brick work on the Hewitts' home. The Hewitts' knew about the problems. Moreover, the defects in the brick work were observable when the Hewitts' took possession of the house and received the written warranty from Kirk's on December 12,

2003. In the warranty, Kirk's warranted that the home was free of defects. Because the Hewitts' knew that Kirk's written assertion was untrue, their cause of action would have accrued when they received the warranty or accepted possession of the house on December 12, 2003.

Since the Hewitts' action did not begin until Kirk's was served on January 31, 2009, their petition was filed outside the applicable 5-year statute of limitations. As a result, the trial court properly granted summary judgment in favor of Kirk's.